UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

Jean-Marc Zimmerman
Law Offices of Jean-Marc Zimmerman LLC
226 St. Paul Street
Westfield, NJ 07090
Tel:  (908) 654-8000
Fax: (908) 654-7207
jmzimmerman@lawofficesjmz.com

Attorneys for Plaintiff Program Rewards Solutions LLC
and Counterclaim-Defendant Bernard R. Baker, III

------------------------------------------------------------ x      10 Civ. 1561 (RJS) (HBP)
PROGRAM REWARDS SOLUTIONS LLC,                               |
                                                             |
                              Plaintiff,               |
    -against-                                           |
                                                             |
POINTS INTERNATIONAL LTD.,                                   |
                                                             |
                              Defendant.               |
------------------------------------------------------------ x
POINTS INTERNATIONAL LTD.,                                   x
                                                             |
                        Counterclaim-Plaintiff,      |
                                                             |
    -against-                                           |
                                                             |
PROGRAM REWARDS SOLUTIONS LLC and                            |
BERNARD R. BAKER, III,                                       |
                                                             |
                        Counterclaim-Defendants.     |
------------------------------------------------------------ x


PLAINTIFF PROGRAM REWARDS SOLUTIONS LLC AND COUNTER-CLAIM
DEFENDANT BERNARD R. BAKER III'S OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS
Case 1:10-cv-01561-RJS   Document 24   Filed 02/09/11   Page 2 of 15

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION .................................................................................................................. 1

II. PATENT-IN-SUIT ................................................................................................................. 1

III. THE LAW OF CLAIM CONSTRUCTION .......................................................................... 2

IV. PROGRAM REWARDS'S CLAIM CONSTRUCTION SHOULD BE ADOPTED ........ 4

    A. **Benefit** ............................................................................................................................ 5

    B. **Benefit Correlation Information** ................................................................................ 6

    C. **Consumer Purchase Plan** ............................................................................................ 7

    D. **Consumer Information** ............................................................................................... 8

    E. **Enabling Organization** ............................................................................................... 9

    F. **Enabling Organization Information** ........................................................................ 10

    E. **Goods and Services Providers** .................................................................................. 11

V. CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*,
    132 F.3d 701, 705 (Fed. Cir. 1997) .................................................................................... 2

*CCS Fitness, Inc. v. Brunswick Corp.*,
    288 F.3d 1359, 1366 (Fed. Cir. 2002) ................................................................................ 3

*Digital Biometrics, Inc. v. Identix, Inc.*,
    149 F.3d 1335, 1344 (Fed. Cir. 1998)................................................................................. 2

*Gillette Co. v. Energizer Holdings, Inc.*,
    405 F.3d 1367, 1374 (Fed. Cir. 2005) ................................................................................ 2

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
    175 F.3d 985, 989 (Fed. Cir. 1999) .................................................................................... 3

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356, 1362-63 (Fed. Cir. 1999) ........................................................................... 3

*Kapusta v. Gale Corp.*,
    No. 05-1091, 2005 U.S. App. LEXIS 24651 (Fed. Cir. Nov. 15, 2005) ............................. 7

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898, 906 (Fed. Cir. 2004) .................................................................................... 2

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd,* 517 U.S. 370 (1996).................................. 2, 3

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
    133 F.3d 1473, 1478 (Fed. Cir. 1998) ................................................................................ 3

*Nazomi Communications, Inc. v. Arm Holdings, PLC*,
    403 F.3d 1364, 1368 (Fed. Cir. 2005) ................................................................................ 3

*Nystrom v. Trex Co.*,
    424 F.3d 1136, 1142 (Fed. Cir. 2005) ................................................................................ 3

*Pfizer Inc. v. Teva Pharms. USA, Inc.*,
    429 F.3d 1364, 1372-73 (Fed. Cir. 2005) ........................................................................... 3

*Phillips v. AWH*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...............................................................2, 3, 4, 7

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313, 1324 (Fed. Cir. 2002) ............................................................................ 2, 3

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576, 1583-84 (Fed. Cir. 1996) ........................................................................ 2, 3

*Vivid Techs. v. American Science & Eng'g.*,
    200 F.3d 795, 803 (Fed. Cir. 1999) .................................................................................... 2

# I.  INTRODUCTION

Pursuant to the Court's July 7, 2010 Scheduling Order, Plaintiff Program Rewards Solutions LLC and Counterclaim Defendant Bernard R. Baker, III (hereinafter collectively "Program Rewards" or "Plaintiff") submit this brief in support of their claim constructions with respect to certain terms in United States Patent No. 5,864,822 ("the '822 Patent") that is the subject of this action. *See* Declaration of Jean-Marc Zimmerman, ¶ 2. Program Rewards' proposed constructions are based on the plain meaning of the words in the claims, the specification and the file history of the '822 Patent, as well as controlling precedent of the U.S. Court of Appeals for the Federal Circuit. Accordingly, Program Rewards' claim constructions should be adopted by this Court.[1]

# II.  PATENT-IN-SUIT

The '822 Patent, entitled "Benefits Tracking and Correlation System For Use With Third-Party Enabling Organization" issued on June 29, 1999 to Bernard R. Baker, III. The '822 Patent was subsequently assigned to Program Rewards. The '822 Patent is directed towards a system that enables consumers to manage and use a variety of benefits, such as miles and points, available from a plurality of goods and service providers, such as airlines, hotels or any vendors offering gift certificates or allowing to purchase any goods or services in exchange, either partially or fully, for the loyalty points or miles accumulated by the participants in their affiliated loyalty programs. The capabilities and operation of the system of the '822 Patent will be more fully understood from the analysis of certain claim terms that follows below.

---

[1] The briefing schedule calls for the simultaneous filing of opening and responsive *Markman* briefs. Therefore, this opening brief by Plaintiff Program Rewards addresses only the terms it believes will be in significant dispute and require construction. Program Rewards believes the remaining terms are either to be given their general ordinary meaning, or do not affect any issue in this litigation and hence do not require construction. However, by the submission of this limited brief, Program Rewards is not waiving, and explicitly reserves, all its rights to rebut in its responsive brief to defendant Points International Ltd.'s ("Points" or "Defendant") opening *Markman* brief, any claim constructions set forth therein, and to address any other arguments Points presents concerning the claim terms of the '822 Patent, including the right to move to exclude any expert report Points attempts to submit, and/or the right to submit its own expert rebuttal report in response to any such submission by Points.

1

### III.     THE LAW OF CLAIM CONSTRUCTION

Generally, claim construction is a legal question to be determined exclusively by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd,* 517 U.S. 370 (1996).  To determine the proper meaning of a claim term, a court must "consider the so-called intrinsic evidence, *i.e.*, the claims, the written description, and, if in evidence, the prosecution history." *Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1344 (Fed. Cir. 1998).  If there is a plain and ordinary meaning of the claim language, then this meaning usually defines the scope of the claims unless the patentee has explicitly disclaimed or clearly disavowed this meaning in the specification or prosecution history.  *Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 906 (Fed. Cir. 2004).  A court commits error if it uses extrinsic evidence, such as expert testimony, unless the intrinsic evidence is insufficient to construe the claim.  *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 705 (Fed. Cir. 1997); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996).  Only the claim language that is in dispute needs to be construed. *Vivid Techs. v. American Science & Eng'g.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

In construing the claim pursuant to a *Markman* proceeding, it is well settled that the language of the claim defines the boundary of its scope.  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002); *Phillips v. AWH Corp.*, 415 F.3d 1303,1312 (Fed. Cir. 2005) ("It is a 'bedrock principle' of patent law that 'the claims of the patent define the invention to which the patentee is entitled the right to exclude.'")  The Federal Circuit "has cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification." *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1374 (Fed. Cir. 2005); *see also Markman*, 52 F.3d at 980 ("The written description part of the specification itself does not delimit the right to exclude.  That is the function and purpose of claims.")  The Federal Circuit has stated that "[i]t is an old axiom that patents 'are to receive a liberal construction, and … are, if practicable , to be so interpreted as to uphold and not to destroy the right of the inventor.'" *Nazomi Communications,*

*Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1368 (Fed. Cir. 2005) (citations omitted.)

The terms used in the claims bear a heavy presumption that they mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art. *Vitronics Corp.*, 90 F.3d at 1582, *citing*, *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002); *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362-63 (Fed. Cir. 1999); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). The Federal Circuit has repeatedly explained that claim terms should generally be given their ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the art at the time of the invention – *i.e.*, the effective date of the filing of the patent application. *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1372-73 (Fed. Cir. 2005); *Phillips*, 415 F.3d at 1313 (citations omitted).

The language of the claims is of primary importance, but they do not stand alone. *Phillips*. 415 F.3d at 1315. The skilled person is deemed to read the claims in the context of the entire patent, including the specification. *Id.*; *Nystrom v. Trex Co.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005) (*quoting Markman*, 52 F.3d at 979) ("[T]he claim terms 'must be read in view of the specification, of which they are a part.'"); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998) ("The best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history."); *Vitronics*, 90 F.3d at 1582 ("Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term."). The Federal Circuit has cautioned against importing limitations from the specification into the patent claims, particularly if the limitation is not consistent with how the skilled person would understand the claim terms. *See Phillips*, 415 F.3d at 1323.

The prosecution history, if available, is also important when construing claim terms. The prosecution history may demonstrate how the patent examiner and the inventor understood the invention and whether the inventor limited the invention during the course of prosecution. *Phillips*,

3

415 F.3d at 1317 (citations omitted).

Finally, courts may also rely on extrinsic evidence, which is all evidence that is external to the patent and prosecution history, for assistance in construing claim terms. *Id*. at 1317, 1318. The extrinsic evidence might include expert and inventor testimony, dictionaries, and learned treatises. *Id*. at 1317. Extrinsic evidence is generally afforded less weight, and should be "considered in the context of the intrinsic evidence." *Id*. at 1319.

### IV.   PROGRAM REWARDS'S CLAIM CONSTRUCTION SHOULD BE ADOPTED

With the foregoing principles in mind, we turn to the specific claim terms that Program Rewards believes require construction. These terms are all set forth in Claim 1 of the '822 Patent which identifies the invention as being:

1. A computer system for permitting a consumer to more effectively make use of a variety of available benefits from a plurality of goods and service providers, wherein said benefits are offered specifically to those consumers having an association with one or more third party enabling organizations, said computer system comprising:

A) means for storing in a memory in the computer system **consumer information**, **enabling organization information** and **benefit correlation information**;

B) means for inputting into said computer system identification information for a consumer and a set of **consumer purchase plan** data for said consumer;

C) means for comparing said identification information to said consumer information to determine those **enabling organizations**, if any, to which said consumer has an affiliation;

D) means for analyzing said **enabling organization information** and said **benefit correlation information** to determine whether any **enabling organization** to which the consumer is affiliated is offering a potentially applicable **benefit** for said **purchase plan** data and whether said **purchase plan** data satisfies all requirements for obtaining said potentially applicable **benefit**;

E) means for displaying a message to inform a system user of any available **benefit** applicable to said **purchase plan** data;

(Emphasis added)

The terms are also found in claims 9 and 17 of the '822 Patent.

A.    "<u>Benefit</u>"

Plaintiff believes that the term "**benefit**" – to the extent it needs to be construed at all by the Court – should be construed as:

> **Discounted rate or any other added value received by a consumer in addition to those otherwise offered to the general public.**

Plaintiff's proposed construction is not only supported by the plain meaning of the claim term, but is actually **expressly defined** in the patent specification.  *See* col. 3, lines 18-23 of the '822 Patent which provides the following express definition for this term:

> As used herein, the term 'benefits' should be understood to mean any discounted rate or any other added value received by a consumer in addition to those otherwise offered to the general public.

This clear and express definition has a discernable plain and ordinary meaning - a gift, payment, discount, two-for one special, limited-time offer or geographically-limited offer, or some additional extra benefit given by an enabling organization to a consumer, where such benefit can be applied toward a particular redemption goal - that has not been disclaimed in any way in the specification or prosecution history of the '822 Patent.  In col. 1, lines 18-42, of the '822 Patent specification, the patentee provides examples of discounts and benefits.  Subsequently, in col. 2, line 24, describing the "summary of the invention," the specification includes examples of "discounts and benefits" within the definition of the term "benefits."

The specification of the '822 Patent does not limit what a "benefit" is or can be. On the contrary, the patent specification **<u>for the second time,</u>** repeats the above definition of the term "benefits" at col. 4, lines 33- 39 of the '822 Patent specification. Nor do the claims or prosecution history include any limitations to the term "benefits". Thus, there is no reason to construe "benefit" to mean anything other than what it is expressly defined as in the patent specification--in multiple places--and in accordance

5

with its plain and ordinary meaning.  Accordingly, Plaintiff's proposed construction of this term should be adopted.

B.      **"Benefit Correlation Information"**

Plaintiff believes that the term "**benefit correlation information**" should be construed as:

> **Information about specific "benefits" offered to consumers by a particular enabling organization.**

Plaintiff's construction is supported by specification.  The term has a discernable meaning - the detailed information about specific benefits offered by an enabling organization to its participating members - that has not been disclaimed in any way in the specification or prosecution history.

Col. 5, lines 49-61 of the specification expressly states that "[t]hus, for a particular benefit listed in a benefit file 26, a benefit correlation data file (or sub-file) 32 would include information such as geographic locations of benefit availability, time periods, limits, conditions or other such factors necessary to determine whether the particular benefit listed in benefit file 26 will be of potential usefulness for a particular consumer . . . As an example, if benefit lA in enabling organization benefit file 26 is a discount hotel rate for a particular hotel chain, it would be preferable for benefit correlation data file 32 to contain information regarding the specific cities where the hotels are located and any time limitations or other restrictions associated with obtaining the benefit."

The "benefits correlation information" includes descriptions about each benefit offered by the enabling organization and can then be utilized by the computerized system described in the '822 Patent to determine the availability of a particular "benefit" to a particular consumer or user. *See* Col. 4, lines 45-50, describing the preferred embodiment, ("For the purposes of the present invention, 'correlation information' shall be understood to mean **detailed information provided for each benefit offered by an enabling organization** which permits the CPU to determine

whether a particular benefit may be of use to a particular consumer") (emphasis added).    Thus, there is no reason to construe "benefit correlation information" to mean anything other than what it is expressly defined as in the patent specification.  Accordingly, Plaintiff's proposed construction of this term should be adopted.

C.  **"Consumer Purchase Plan"**

Plaintiff believes that the term "**consumer purchase plan**" – to the extent it needs to be construed at all by the Court – should have its ordinary and customary meaning to one skilled in the art in 1996 and be construed as follows:

**Purchase plans relating to any type of goods or services.**

Plaintiff's construction is expressly supported by the patent specification of the '822 Patent and comports with the plain meaning of the claim term at issue.  The term has a discernable plain and ordinary meaning - a plan pertaining to the purchase of goods or services by a consumer - that has not been disclaimed in any way in the specification or prosecution history.  On the contrary, in col. 7, line 26 of the '822 Patent specification, it expressly states that "[t]he purchase plans can **relate to any type of goods or services**." (emphasis added).  The specification then provides examples of a particular type of goods and services that may be used in the preferred embodiment of the patented system.  *See* '822 Patent, col. 7, lines 25-37) ("In a preferred embodiment…")

Defendant's proposed construction for this term not only contradicts the above express definition of the term in the patent specification, but also impermissibly limits it to some specific examples of the "purchase plans" provided in connection with preferred embodiment.  This is clearly contrary to the well-established Federal Circuit law on this issue.  It is impermissible for a court to confine claims to the disclosed embodiments.  *See Phillips*, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments"); *Kapusta v. Gale Corp.*, No. 05-1091, 2005 U.S. App. LEXIS 24651, at *8 (Fed. Cir. Nov. 15, 2005) (claim term not limited to particular

7

numerical dimensions because there was no indication in the specification that the embodiment in the figures or description including size limitations was meant to be the only embodiment).

The specification of the '822 Patent does not limit what types of goods or services can comprise or be the subject of a "consumer purchase plan." On the contrary, it expressly disclaims such proposed limitations. Nor do the claims or prosecution history include any such limitations. Thus, there is no reason to construe "consumer purchase plan" to mean anything other than what it is expressly defined as in the '822 Patent specification, and in accordance with its plain and ordinary meaning. Accordingly, Plaintiff's proposed construction of this term should be adopted.

### D. "Consumer Information"

Plaintiff does not believe that this term should be construed. However, to the extent that it needs to be construed at all by the Court, it should be construed as follows:

> **Information that includes name, number, social security number, credit card account number, or any other combination of letters and number which uniquely identifies a particular individual.**

Plaintiff's construction is expressly supported by the patent specification of the '822 Patent and comports with the plain meaning of the claim term at issue. The term has a discernable plain and ordinary meaning - information about a particular consumer - that has not been disclaimed in any way in the specification or prosecution history.

Col. 5, lines 11-16 of the specification expressly states that "[i]n a fully operational system, the consumer identification information could be a social security number, credit card account number, **or any other combination of letters and numbers which uniquely identify a particular individual authorized to use the system**." *See also* col. 5, lines 17-26 of the '822 Patent specification (emphasis added). This plainly includes any unique name, number or a combination of both, which identifies the individual consumer. Thus, there is no reason to construe "consumer information" to mean anything other what is expressly defined in the specification. Furthermore, there is no reason to construe the claim more narrowly than expressly defined in connection with

8

the preferred embodiment.  Accordingly, to the extent that any claim construction is needed, Plaintiff's proposed construction of this term should be adopted.

E.     **"Enabling Organization"**

Plaintiff believes that the term "**enabling organization**" should be construed as follows:

> **Any organization or group which makes available, for specific individuals who are members or associated with such enabling organization, special benefits which are not available to the general public.**
>
> **It can be the same or different organizations or a part of the group that provides goods and services, or a part of the group together with a database provider.**

Plaintiff's construction is expressly defined and supported by the specification.  The term has a discernable meaning - a third party organization having a pre-existing relationship with a consumer, and offering benefits to said consumer - that has not been disclaimed in any way in the specification or prosecution history.

Col. 5, lines 30-42 of the specification expressly states that "[e]nabling organization file 16 is preferably comprised of a plurality of enabling organization benefit files 26 for each separately identified enabling organization 28.  Each enabling organization 28 can be identified either by a name or number which has been defined to identify that particular organization.  Each enabling organization benefit file 26 includes a benefits list 30 defining specific benefits enabled by a particular enabling organization 28**.**

As noted above, "an enabling organization can be any organization or group which makes available, for specific individuals who are members or associated with such enabling organization, special benefits which are not available to the general public" (emphasis added).  There is no discussion in the specification or anywhere in the file history that the "enabling organization" can't be part of the group of companies affiliated with a provider of goods and/or services, or that it can't be the provider of goods and/or services, or that it can or can't be the database provider.  Thus, there is no reason to construe "enabling organization" to mean anything other than what it is expressly

9

defined as in the patent specification. Accordingly, Plaintiff's proposed construction of this term should be adopted.

F. **"Enabling Organization Information"**

Plaintiff believes that the term "**enabling organization information**" should be construed as follows:

> **Data relating to an enabling organization or group of organizations, including one or more benefits offered to a consumer as a result of the consumer's affiliation with or membership with such enabling organization.**

Plaintiff's construction is expressly supported in multiple places in the '822 patent specification. *See* col. 4, lines 30-33; col. 5, lines 56-58; and col. 2, lines 27-33 of the '822 Patent specification. There is no requirement that the enabling organization information must contain **all** "benefits" offered to a particular consumer. On the contrary, the specification expressly provides that "[t]he second category of information, relating to enabling organizations, generally includes a list of certain specific organizations which make available <u>**one or more benefits for consumers associated with such enabling organization**…. A list of the one or more benefits provided by each of the enabling organizations is associated with each such enabling organization.</u>" *See* the '822 Patent, col. 4, lines 30-33; col. 5, lines 56-58 (emphasis added). This clearly defines this term as including "benefits" information offered to "**consumers**" associated with that enabling organization; not to some exhaustive list of "all" benefits available to a particular consumer. Such convoluted construction contradicts the express definition and description in the patent specification. The specification further clarifies this claim term as follows:

> [e]ach enabling organization benefit file 26 includes a benefits list 30 defining specific benefits enabled by a particular enabling organization 28. As noted above, an enabling organization can be **any organization or group** which makes available, **for specific individuals who are members or associated with such enabling organization**, special benefits which are not available to the general public.

Col. 5, lines 30-42 of the '822 Patent specification (emphasis added). Again, the specification clearly refers and describes that the enabling organization is any organization or a group that makes

10

one or more benefits available to "specific individuals who are members or associated" with it; not some exhaustive list of benefits offered to a particular member.

Thus, there is no reason to construe "enabling organization information" to mean anything other than what it is expressly defined as in the patent specification. Accordingly, Plaintiff's proposed construction of this term should be adopted.

## G. "Goods and Services Providers"

Plaintiff does not believe that this term needs to be construed. However, to the extent it needs to be construed at all by the Court, it should be construed as follows:

**Entities or individuals that provide goods or services.**

Plaintiff's construction is supported by the plain meaning of the claim term as well as by the express provisions in the '822 Patent specification. The term has a discernable plain and ordinary meaning - providers of goods or services - that has not been disclaimed in any way in the specification or prosecution history. Specifically, the goods and service providers can be enabling organizations, or separate third parties that are not an enabling organization, or have some affiliation with the enabling organization. Neither the patent claims, nor the specification or file history contain any such limitations. Furthermore, the specification clearly states that the invention is not limited to any particular "goods or services." In col. 2, lines 53-55, it states that "[s]ignificantly, **while the system may be used with any type of goods or services a consumer might wish to purchase**, it is particularly advantageous in connection with travel planning…."; *see also* col. 6, lines 58-61 (describing purchase of home appliances using the system claimed in the '822 Patent); *see also* col. 7, line 26 of the '822 Patent ("[t]he purchase plans can **relate to any type of goods or services**") (emphasis added).

The specification of the '822 Patent does not limit who can be the "goods and services providers" nor what constitutes "goods and services" within the scope of the '822 Patent. No such limitations are present in the patent claims, the specification or the file history. Thus, there is no

11

reason to construe "goods and services providers" to mean anything other than what is its plain and ordinary meaning and the express description in the patent specification. Accordingly, to the extent that any construction is needed, Plaintiff's proposed construction of this term should be adopted.

## V. CONCLUSION

For the foregoing reasons, Program Rewards respectfully submits that its proposed claim constructions be adopted.

By: /s/Jean-Marc Zimmerman
Jean-Marc Zimmerman
Law Offices of Jean-Marc Zimmerman LLC
226 St. Paul Street
Westfield, NJ 07090
Tel: (908) 654-8000
Fax: (908) 654-7207
jmzimmerman@lawofficesjmz.com

Attorneys for Plaintiff Program Rewards Solutions LLC and Counterclaim Defendant Bernard R. Baker, III

Date: February 9, 2011
Westfield, New Jersey