UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
PROGRAM REWARDS SOLUTIONS LLC,

                        Plaintiff,                           10 Civ. 1561 (RJS) (HBP)

       -against-

POINTS INTERNATIONAL LTD.,

                        Defendant.
------------------------------------------------------------------ x
POINTS INTERNATIONAL LTD.,

                        Counterclaim-Plaintiff,

     -against-

PROGRAM REWARDS SOLUTIONS LLC and
BERNARD R. BAKER, III,

                        Counterclaim-Defendants.
------------------------------------------------------------------ x


## POINTS INTERNATIONAL LTD.'S  REBUTTAL
## BRIEF ON CLAIM CONSTRUCTION


                       COWAN, LIEBOWITZ & LATMAN, P.C.

                       Michael F. Maschio (mfm@cll.com)
                       Mark Montague (mxm@cll.com)
                       Eric J. Shimanoff (ejs@cll.com)
                       Catriona M. Collins (cmc@cll.com)

                       1133 Avenue of the Americas
                       New York, New York 10036-6799
                       (212) 790-9200

                       Attorneys for Defendant/Counterclaim-Plaintiff
                       Points International Ltd.

## Table of Contents

Page

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ..............................................................................................................3

1. Claim Terms Are Not a Nose Of Wax To Be
   Twisted To Suit Plaintiff's Theory Of Infringement ..............................................3

2. PRS Impermissibly Ignores The Claim Preambles.................................................5

3. PRS Impermissibly Ignores The Prosecution History .............................................6

4. Different Claim Terms Must Be
   Accorded Different Meanings...........................................................................9

5. Claims Must Be Read In Light Of The
   Objectives And Purpose of the Invention ...........................................................10

6. PRS's Definitions Should Be Rejected As
   Inaccurate, Incomplete And Lacking Support .....................................................12

   (a) Enabling Organization ...........................................................................12

   (b) Goods and services providers .................................................................13

   (c) Benefit..............................................................................................14

   (d) Consumer purchase plan ........................................................................15

   (e) Consumer information ...........................................................................17

   (f) Enabling organization information ............................................................18

   (g) Benefit correlation information.................................................................19

CONCLUSION..........................................................................................................20

i

# Table of Authorities

Page(s)

CASES

*Bicon, Inc. v. Straumann Co.*,
    441 F.3d 945 (Fed. Cir. 2006)...................................................................................5, 9

*Catalina Marketing Int'l v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002)........................................................................................6

*Chimie v. PPG Indus., Inc.*,
    402 F.3d 1371 (Fed. Cir. 2005)......................................................................................7

*Eaton corp. v. Rockwell Int'l Corp.*,
    323 F.3d 1332 (Fed. Cir. 2003).......................................................................................5

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*,
    214 F.3d 1302 (Fed. Cir. 2000)......................................................................................9

*Elkay Mfg. co. v. Ebco Mfg. Co.*,
    192 F.3d 973 (Fed. Cir. 1999),
    *cert denied*, 529 U.S. 1066 L. Ed. 2d 482, 120 S. Ct. 1672 (2000) ............................8

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
    64 F.3d 1553 (Fed. Cir. 1995) (Plager, J. concurring) ...............................................4

*Fuji Photo Film Co. v. ITC*,
    386 F.3d 1095 (Fed. Cir. 2004)...................................................................................8, 9

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004)......................................................................................9

*Inverness Med. Switz. Gmbh v. Warner Lambert Co.*,
    309 F.3d 1373 (Fed. Cir. 2002)......................................................................................8

*Johnson & Johnson assoc. v. R.E. Serv. Co.*,
    285 F.3d 1046 (Fed. Cir. 2002) (en banc)....................................................................9

*Lemelson v. Gen. Mills, Inc.*,
    968 F.2d 1202 (Fed. Cir. 1992)......................................................................................9

*On Demand Machine Corp. v. Ingram Indus.*,
    442 F.3d 1331 (Fed. Cir. 2006)....................................................................................10

ii

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005)................................................................................8

*Renishaw PLC v. Marposs Societa per Azioni*,
 158 F.3d 1243 (Fed. Cir. 1998)..............................................................................10

*Sage Prods., Inc. v. Devon Indus., Inc.*,
 126 F.3d 1420 (Fed. Cir. 1997)................................................................................8

*Southwall Tech., Inc. v. Cardinal IG Co.*,
 54 F.3d 1570 (Fed. Cir. 1995)..................................................................................8

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
 775 F.2d 1107 (Fed. Cir. 1985) (*en banc*) ..............................................................3

*Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*,
 442 F.3d 1322 (Fed. Cir. 2006)................................................................................3

iii

## PRELIMINARY STATEMENT

The invention claimed in the '822 patent requires several distinct, but interrelated, elements. The claimed computer system is designed for use by a consumer who is a member of one or more third party "enabling organizations." The "enabling organization" enables "benefits" that are provided by third party "goods and service providers." The system allows the consumer to enter a "purchase plan" with sufficient details about his planned purchase to enable the computer system to determine automatically whether any of the "benefits" enabled by any of the "enabling organizations" of which the consumer is a member can be used to make the planned purchase.  To make this determination, the computer system stores and analyzes information that identifies the consumer, the "enabling organizations" to which he belongs and the "benefits" enabled by such organizations.  All the claim elements are described in the patent as interacting with or relating to each other in a specific way.  The interrelationship of the separate elements must be recognized in defining the claim terms. Otherwise, there is a danger that the inventor will be accorded a patent of such sweeping breadth as to vitiate the public notice function of the patent claims and, ultimately, render the patent invalid.

As explained in more detail in Defendant Points' opening brief (pages 5-7), Points' system allows users to buy, transfer, trade, exchange and redeem loyalty program points from various loyalty programs, such as American Airlines AAdvantage miles.  For example, the points.com website allows a consumer to redeem his American Airlines AAdvantage points for retail gift certificates that can be used to purchase goods or services provided by the applicable retailers.  The gift certificates are offered based on Points' agreements with wholesale suppliers of gift cards or based on Points' agreement with the particular retailer.  Outside of Points' website, many loyalty programs themselves enable a consumer to redeem his accumulated points

1

for a variety of benefits, including goods and services from third party retailers. However, these types of benefits that are offered by loyalty programs are not at issue in this case because Points' accused system does not store and analyze these loyalty program benefits. A consumer who wants to redeem his loyalty program points for such a benefit offered by a loyalty program has to deal directly with the loyalty program.

Beginning on page 1 of its opening brief, Plaintiff Program Rewards Solutions LLC ("PRS") attempts to rewrite the claims of the '822 patent to explicitly reference the accused Points system.  PRS alleges that "the '822 patent is directed towards a system that enables consumers to manage and use a variety of benefits, such as <u>miles and points</u>, available from a plurality of goods and services providers, such as airlines, hotels and vendors offering <u>gift certificates</u> or allowing to purchase any goods or services in exchange, either partially or fully, for the <u>loyalty program points or miles</u> accumulated by the participants in their affiliated loyalty programs." (*See* Plaintiff's Opening Claim Construction Brief, page 1 under heading II, Patent-In-Suit) (Emphasis added).  This summary misrepresents the teachings and scope of the '822 patent, and is specifically worded with an eye towards Points' accused system. Significantly, the following terms do not appear anywhere in the '822 patent, although these terms are used on Points' accused website: "miles," "points," "gift certificates" and "loyalty program."  In fact, the complete absence of any mention of frequent flyer mileage programs in the '822 patent conveys the distinct impression that the inventor never had the management of such loyalty program points in mind when he conceived his invention and filed his patent application.

2

## ARGUMENT

### 1.   Claim Terms Are Not a Nose Of Wax To Be Twisted To Suit Plaintiff's Theory Of Infringement

Claim construction does not have to be done in a vacuum. In ruling on claim construction, some consideration and understanding of the accused product is useful because it provides the court with a meaningful context for claim construction. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326-27 (Fed. Cir. 2006).  However, this does not mean that claim construction can be influenced by a patent owner's theory of infringement. The Federal Circuit has cautioned that claim terms are not to be construed with an eye towards the accused product. *See, e.g.*, *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (*en banc*). PRS's proposed claim construction violates this rule.  PRS's definitions of claim terms are dictated by its infringement theory, rather than by the purpose and scope of the invention as described in the patent specification.

An essential part of PRS's infringement theory is that the frequent flyer mileage points, and other loyalty program points, that can be traded, exchanged, or redeemed on the points.com website constitute "benefits" within the meaning of the patent claims.[1]  Frequent flyer mileage points and other loyalty program points are, of course, provided by the loyalty programs, not by third party goods and services providers. But the patent claims, as well as the written description, specifically require that "benefits" be provided by third party "goods and service providers" and be enabled by third party "enabling organizations." *See*, e.g., preamble to claim 1, which refers

---

[1] *See* Plaintiff's Opening Claim Construction Brief, page 1, where PRS alleges that the '822 patent covers a system that enables consumers to manage "benefits, such as miles and points."

to "benefits from a plurality of goods and services providers" that are offered "specifically to those consumers having an association with one or more third party enabling organizations."

This presents a conundrum for PRS.  If the loyalty programs in Points' system constitute the "goods and services providers" which provide the "benefits" required by the patent claims, then who is the "enabling organization" also required by the patent claims?  PRS's proposed claim construction posits two possible answers: (1) the enabling organization in Points' system is Points itself, i.e., the database provider, and/or (2) the enabling organizations in Points' system are the loyalty programs, even though, according to PRS's theory, the loyalty programs are also the "goods and services providers" since they provide the "benefits" (i.e. the loyalty program points, according to PRS's infringement theory).

PRS's problem is that the accused Points' system simply does not have enough elements to fit within the parameters of the patent claims as written. PRS's solution is to have the Court rewrite the patent claims to eliminate at least one of the separate entities required by the claims. Accordingly, PRS asks the Court to rule that the "enabling organization" can be the same entity as the database provider and/or the same entity as "the goods and services providers." But the claims cannot be rewritten simply to read on Points' accused system. "The language through which claims are expressed is not a nose of wax to be pushed and shoved into a form that pleases and that produces a particular result…" *Exxon Chem. Patents, Inc. v. Lubrizol Corp.,* 64 F.3d 1553, 1563 (Fed. Cir. 1995) (Plager, J. concurring). While it is not improper for the Court to have an understanding of the infringement dispute to provide it with some context for the claim construction, the claim construction analysis has to be objective and grounded in the patent specification and file history.

4

## 2.    PRS Impermissibly Ignores The Claim Preambles

PRS  argues that an "enabling organization" can be "the same …  organizations or a group that provides goods and services, or a part of the group together with a database provider." (*See* PRS opening brief, page 9). In other words, PRS urges the Court to eliminate the distinctions between the separate entities (enabling organization, database provider and goods and services providers) described in the patent.  PRS's claim construction, dictated by its infringement theory, ignores the clear language of the claim preambles.

The claim "preamble" is the claim language preceding the term "comprising."  *See Bicon, Inc. v. Straumann Co*., 441 F.3d 945, 49 (Fed. Cir. 2006) ("…the preamble consisting of everything in the claim preceding the word "comprising,"…").  The preamble of claim 1 is exemplary. It reads as follows:

> "A computer system for permitting a consumer to more effectively make use of a variety of available benefits from a plurality of goods and service providers, wherein said benefits are offered specifically to those consumers having an association with one or more third party enabling organizations, said computer system comprising:" (Emphasis added).

A preamble to a claim that is used only to state the purpose of the invention is not generally regarded as a claim limitation, but a preamble is regarded as limiting if it recites essential structure that is important to the invention or necessary to give meaning to the claim. *Id.* at 952.  "[W]hen the limitations in the body of the claim 'rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention.'" *Id.* (quoting *Eaton Corp. v. Rockwell Int'l Corp*., 323 F.3d 1332, 1339 (Fed. Cir. 2003)).

5

In this case the preambles to claims 1, 9 and 17 all recite "goods and service providers" and "third party enabling organizations" as separate elements.[2]  In addition, the preambles preface the term "enabling organizations" with the words "third party," thus making it even more clear that the enabling organization recited in the claims is not the same entity as the goods and services provider or the database provider.  The references to "enabling organization(s)" in the body of the claims derive antecedent basis from the reference to "third party enabling organizations" in the preamble, thus giving the preamble effect as a claim limitation.

The limiting effect of the preamble is supported by the fact that the examiner, with the agreement of the inventor's patent attorney, amended the claim preambles so as to distinguish the patent claims from the prior art, thus recognizing that the preambles to claims 1, 9 and 17 have effect as claim limitations.  *See  Catalina Marketing Int'l v. Coolsavings.com, Inc*., 289 F.3d 801, 808 (Fed. Cir. 2002) (clear reliance on a preamble during prosecution can distinguish a claimed invention from the prior art and render the preamble a claim limitation).

### 3.    PRS Impermissibly Ignores The Prosecution History

The qualification "third party" was added to the claim preambles by the examiner in an examiner's amendment, and the examiner made it clear that he was adding the qualification "third party" to render the claims patentable over the prior art. The examiner's amendment, as shown in the pertinent excerpt below, was discussed with and approved by Mr. Baker's patent attorney, Robert Sacco, and added the qualification "third party" after the words "one or more" and before the words "enabling organizations" in the preambles to claims 1, 9 and 17.

---

[2] A copy of the '822 patent is attached as Exhibit A to Points' opening brief. Claims, 1, 9 and 17 are set forth separately in Exhibit B to Points' opening brief.

6

> 2.      Authorization for this examiner's amendment was given in a telephone interview with
>
> Robert Sacco on 2/9/97.
>
> ·3.      The application has been amended as follows:
>
>   In claim 1, line 5, add the new text "third party" after the text "...one or more..."
>
>   In claim 9, line 5, add the new text "third party" after the text "...one or more..."
>
>   In claim 17, line 5, add the new text "third party" after the text "...one or more..."

(*See* PTO office action dated February 7, 1998, Collins Decl.[3] Exh. 1, page 2)

On the next page of the office action, the examiner explained the reason for the

amendment and the reason that the patent claims, as amended, were being allowed. The

examiner explained that there was "no suggestion or disclosure in the prior art of a separate

unrelated entity which maintains records on customers and third party enabling organizations as

well as benefits offered by said organizations for the purpose of informing customers of all

benefits relevant to a purchase plan which are available on the basis of the customer's

association with at least one of the third party enabling organizations." (*See* Collins Decl., Exh 1,

page 3).

The inventor's patent attorney, Mr. Sacco, specifically agreed to the examiner's

amendment and did not file any comments in response to the examiner's reasons for allowance,

thus indicating his agreement therewith.  By agreeing to amend the claims to require that the

"enabling organization" be a "third party," the inventor surrendered any broader claim scope.

*See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (the claim construction

should "exclude any interpretation that was disclaimed during prosecution").  Such a use of the

---

[3] "Collins Decl." refers to the declaration of Catriona M. Collins filed in support of
Points' opening brief.

7

prosecution history ensures that claims are not construed one way in order to obtain their allowance and in a different way against accused infringers. *Southwall Tech., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995). Indeed, were it otherwise, the claims would be invalid over the prior art that the inventor sought to avoid by agreeing to the examiner's amendment. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1327-28 (Fed. Cir. 2005) (where practicable, "claims should be construed to preserve their validity.")

      In addition to the disclaimer of a broader claim scope based on the amendment itself, the inventor's failure to register any disagreement with the examiner's reasons for allowance constitutes a further disclaimer.  Failure to object to an examiner's interpretation of a claim ordinarily disclaims a broader interpretation.  *Inverness Med. Switz. Gmbh v. Warner Lambert Co.*, 309 F.3d 1373, 1380 (Fed. Cir. 2002) (citing  *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999), cert. denied, 529 U.S. 1066, 146 L. Ed. 2d 482, 120 S. Ct. 1672 (2000) (holding that failure to respond to an examiner's reason for allowance functioned as a disavowal of a different interpretation of the claim)). *See* also *Fuji Photo Film Co. v. ITC*, 386 F.3d 1095, 1100 (Fed. Cir. 2004)*,* where the Federal Circuit held that "the applicant's failure to correct the examiner's characterization" of one of the claim terms at issue prevented the patentee from later urging a different claim construction.  "[A]s between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection" for particular subject matter. *Id.* at 1100-1101  (citing *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997). "Other players in the marketplace are entitled to rely on the record made in the Patent

Office in determining the meaning and scope of the patent." *Id*, citing *Lemelson v. Gen. Mills, Inc*., 968 F.2d 1202, 1208 (Fed. Cir. 1992).

### 4.    Different Claim Terms Must Be Accorded Different Meanings

Courts cannot write claim limitations out of the claim or construe different claim terms to mean the same thing.  *See Bicon, Inc. v. Straumann Co*., 441 F.3d at 950-951.  It is a well-established principle of claim construction that "all claim terms are presumed to have meaning in a claim." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc*., 381 F.3d 1111, 1119 (Fed. Cir. 2004).  "The purpose of a patent claim is to define the precise scope of a claimed invention, thereby 'giving notice both to the examiner at the U.S. Patent and Trademark Office during prosecution, and to the public at large, including potential competitors, after the patent has issued.'"  *Bicon,* 441 F. 3d at 950, citing *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co*., 285 F.3d 1046, 1052 (Fed. Cir. 2002) (en banc).

Allowing a patentee to argue that structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, non-limiting elaboration. For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim. *Id*. *See*, e.g., *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1305, 1307 (Fed. Cir. 2000) (claim language "only within a zone extending between latitudes 30 [degrees] -45 [degrees]" does not read on a device with radiation sources extending between 14 [degrees] and 43 [degrees] because "any other conclusion renders the reference to 30 [degrees] superfluous").

9

PRS argues that an "enabling organization" can be "the same … organizations or a group that provides goods and services, or a part of the group together with a database provider." (*See* PRS opening brief, page 9). This interpretation eliminates the separate claim element "goods and services providers" or, alternatively, the separate claim element "enabling organization," thus rendering that claim element meaningless and superfluous. This makes the true scope of the patentee's monopoly impermissibly ambiguous.

As set forth in Points' opening brief, PRS's interpretation is also contrary to the clear teachings of the written description which instructs that the invention is directed to managing benefits provided by a plurality of third party goods and services providers that are enabled by third party enabling organizations. *See* Points' opening claim construction brief, pages 16-18.

**5.    Claims Must Be Read In Light Of The**
    **Objectives And Purpose of the Invention**

In claim construction, "each term must be construed to implement the invention described in the specification." *On Demand Machine Corp. v. Ingram Indus.*, 442 F.3d 1331, 1344 (Fed. Cir. 2006). "Care must be taken lest word-by-word definition, removed from the context of the invention, leads to an overall result that departs significantly from the patented invention." *Id*. "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop within the claim." *Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

The purpose of the invention of the '822 patent is "to provide a system whereby organizations which 'enable' discounts and benefits from third-party service and/or goods providers could do so in a manner which allows the members to more advantageously make use

10

of such benefits and discounts." ('822 patent, Col. 2, lines 7-11). The written description repeatedly describes the "enabling organizations" and the "goods and services providers" as being separate entities. (*See* Points' opening brief, pages 16-17).

PRS can point to nothing in the specification to suggest that the invention relates to a system for managing benefits enabled and supplied by the same entity.  There is no suggestion anywhere in the patent that the inventor regarded this possibility as within the scope of his invention. If the inventor had this in mind as part of his invention he would have so stated, and would not have referred to the "goods and services providers" as "third party" throughout the written description.  This is illustrated by the fact that the inventor included in the written description a suggestion that the database provider could, in certain circumstances, act as an "enabling organization." [4]  As discussed above, this alternative was disclaimed in the prosecution history. But the fact that the inventor mentioned the possibility of the database provider also being an enabling organization effectively demonstrates that if the inventor had in mind, as part of his invention, the possibility that the "enabling organization" and the "goods and services providers" could be one and the same, he would have so stated. The fact that the patent is completely silent as to any such possibility speaks volumes.

---

[4] *See*,'822 patent. Col. 7, lines 63-67: "[T]he operator of the database could negotiate directly with the providers of goods and services to offer discounts to consumers participating in the database. In such cases, the organization operating the database would itself be the enabling organization."

**6.  PRS's Definitions Should Be Rejected As
    Inaccurate, Incomplete And Lacking Support**

### (a)    Enabling Organization

| *Points' proposed definition:* | *PRS's proposed definition:* |
|---|---|
| An organization or group, other than the consumer, the database provider or the goods and services provider, which makes available to its members, or to other persons who are associated with it, "benefits" that are provided by third party suppliers of goods or services based on an arrangement between the "enabling organization" and the third party supplier. | Any organization or group which makes available, for specific individuals who are members or associated with such enabling organization, special benefits which are not available to the general public. It can be the same or different organizations or a group that provides goods and services, or a part of the group together with a database provider. |

For all the reasons set forth above and in Points' opening brief, the "enabling organizations" and the database provider cannot be construed to be the same entity.  Neither can the "enabling organization" and the "goods and services providers" be construed to be one and the same.

The patent teaches that the enabling organization "does not directly provide a benefit or discount, but instead enables discounts or benefits available through a third party." ('822 patent, Col. 1, lines 20-24). As an example, the patent describes "this type of arrangement" as existing in the case of "certain credit card companies which will offer to their cardholders certain discounts and benefits when such cardholders purchase goods and services from third-party entities such as airlines, rental car companies, restaurants, and particular retail stores." ('822 patent, Col. 1, lines 25-30).  In fact, the only way that an "enabling organization" can offer a benefit not otherwise available to the public is through an arrangement with the goods and services provider. For example, an enabling organization cannot offer its members a 10% discount at a particular retailer unless the enabling organization has an arrangement with the retailer to this effect.

12

The fact that the "benefits" enabled by the "enabling organization" are provided by the third party suppliers of goods or services based on an arrangement between the "enabling organization" and the third party supplier should be included in the claim construction.  It is important that this interrelationship of the claim elements be recognized in construing the claim terms so that the claims are accorded their appropriate scope.

Accordingly, PRS's above identified definition of "enabling organization" should be rejected and Points' proposed definition, set forth above, should be adopted.

**(b)     Goods and services providers**

| Points' proposed definition: | PRS's proposed definition: |
|---|---|
| A third party supplier of products or services who is not an enabling organization and is not the database provider. | Entities or individuals that provide goods or services. |

PRS contends that the specification does not limit "goods and services providers" in any way. For all the reasons stated above and in Points opening brief (pages 15-17), that is incorrect. The patent makes it clear that the "goods and services providers" are "third party" and not the same entity as the "enabling organization" or the database provider. Points' proposed construction, set forth above, incorporates this important distinction, and should be adopted.

13

(c)   **Benefit**

| *Points' proposed definition*: | *PRS's proposed definition*: |
|---|---|
| A discounted rate or other added value provided by a third party supplier of products or services that is offered to a consumer in addition to what is otherwise offered to the general public, only as a result of the consumer's association or membership in an "enabling organization." | Discounted rate or any other added value received by a consumer in addition to those otherwise offered to the general public. |

The '822 patent's general definition of "benefits," upon which PRS relies, is intended simply to notify the public that the term "benefits" as used in the invention includes "discounts," as well as other values. The specification makes several references to the fact that "benefits" is meant to include "discounts," so this is the clear purpose of the general definition. However, that does not mean that the proper construction of the term "benefits" ends there. When the patent specification instructs that "benefits" is to be read as including "discounts," the immediately preceding or succeeding sentences makes it clear that "benefits," within the meaning of the patent, are provided by third party suppliers of goods or services and are offered to a consumer only as a result of the consumer's association or membership in an "enabling organization."

> "According to one aspect of the invention, a purchase-planning system is provided for permitting a consumer to more effectively make use of a variety of available discounts and benefits from a plurality of goods and service providers. The system is advantageously designed for situations wherein the discounts or benefits (hereinafter collectively referred to as 'benefits') are limited in availability to those consumers having an association or affiliation with one or more third-party enabling organizations"   ('822 patent, Col. 2, lines 19-27). (Emphasis added).

* * *

> "According to the present invention, a computerized system is shown in FIG. 1 which permits consumers to more effectively make use of a variety of available benefits from a plurality of goods and service providers. As used

14

herein, the term <u>'benefits' shall be understood to mean any discounted rate or any other added value</u> received by a consumer in addition to those otherwise offered to the general public. The invention particularly facilitates use of <u>benefits which are offered to those consumers having an association with one or more third-party enabling organizations</u>. The invention allows consumers to make advantageous use of such benefits offered through third party enabling organizations by correlating the specific benefits offered with the needs of the consumer when he is ready to purchase." ('822 patent, Col. 3, lines 15-28). (Emphasis added).

\* \* \*

"The second category of information, relating to enabling organizations, generally includes a list of certain specific organizations which make available one or more <u>benefits for consumers associated with such enabling organization</u>. As noted above, the term 'benefits' as used herein shall be understood to mean a discounted rate or any other added value available to a member of the enabling organization, which is not generally available to the public." ('822 patent, Col. 4, lines 30-37). (Emphasis added).

Accordingly, PRS's definition of "benefits" is incomplete and ignores the further explanation of the meaning of "benefits" which is explicitly set forth in the patent specification. For this reason, PRS's proposed definition should be rejected and Points' proposed definition, set forth above, should be adopted.

### (d)   Consumer purchase plan

| *Points' Proposed definition:* | *PRS's proposed definition:* |
|---|---|
| A proposed travel itinerary for a future trip, or data sufficient to identify a specific type of good or service for possible future purchase by the consumer and preferred brands, price range, time period when the purchase will occur or geographical area where the consumer is willing to travel to make the purchase. | Purchase plan relating to any type of goods or services. |

PRS's proposed definition, set forth above, is so vague as to be essentially meaningless in the context of a computer system. The computer system described in the patent would obviously

15

require sufficient details about the consumer's planned purchase to determine whether any of the "benefits" enabled by any of the "enabling organizations" of which the consumer is a member could be applied to the planned purchase. To conduct this analysis the computer system needs some detailed information. The question is what details of the planned purchase should be included in the "consumer purchase plan"?  The specification provides the following answers.

In the case of a consumer who is planning to purchase travel services the written description teaches that the details of the travel itinerary would be entered into the system. (*See* '822 patent, Col. 6, lines 42-47). In the case of a consumer who is planning to purchase a product, the written description instructs that the consumer would be instructed to enter "data relating to the type of product the consumer wished to buy, and the geographic area to which the consumer was willing to make his purchase." ('822 patent, Col. 6, lines 58-63).

The patent then goes on to describe a preferred embodiment in which the system prompts the user to enter specific details of the planned purchase. The details that the user would be prompted to enter include "preferred brands, price range, time period when the purchase will occur, geographical area where the consumer is willing to travel to make a purchase, etc." ('822 patent, Col. 7, lines 32-37).

Accordingly, in the case of a consumer planning a purchase other than a travel itinerary, Points' proposed definition includes "data sufficient to identify a specific type of good or service for possible future purchase" and the following:  "preferred brands, price range, time period when the purchase will occur <u>or</u> geographical area where the consumer is willing to travel to make the purchase." (Emphasis added).  Contrary to PRS's assertion, Points' proposed definition does not require all of the purchase plan data of the preferred embodiment.  Points definition is

16

considerably broader than the preferred embodiment.  On the other hand, PRS's proposed

definition "purchase plan relating to any type of goods or services" is merely tautological and, as

such, completely unhelpful in the context of any infringement analysis.

### (e)  Consumer information

| Points proposed definition: | PRS's proposed definition: |
|---|---|
| An identifying name or number for a particular consumer, associated with an identifying list of "enabling organizations" of which the particular consumer is a member or with whom the consumer has an affiliation. | Information that includes name, number, social security number, credit card account number, or any other combination of letters and number which uniquely identifies a particular individual. |

As set forth in Points' opening brief, the written description teaches that "consumer

information generally <u>includes</u> an identifying name or number for a particular consumer." ('822

patent, Col. 4, lines 20-22) (Emphasis added). The word "includes" indicates that "consumer

information" encompasses additional data. The next sentence of the patent specification indicates

what additional data is needed, namely, the association of the consumer identification

information with "an identifying list of organizations to which the consumer is a member, or has

an affiliation." ('822 patent, Col. 4, lines 23-25). *See* also Figure 1 of the '822 patent which

depicts the consumer identification data stored in the computer system as associated with each

enabling organizations ("Org.") of which the consumer is a member. Accordingly, PRS's

definition of "consumer information" is inaccurate and incomplete and should be rejected in

favor of Points' definition.

17

(f)     **Enabling organization information**

| Points proposed definition: | PRS's proposed definition: |
|---|---|
| Information that includes, for each "enabling organization", a list of all the "benefits" offered to a consumer as a result of the consumer's affiliation or membership in the "enabling organization." | Data relating to enabling organization or group of organizations, including one or more benefits offered to a consumer as a result of the consumer's affiliation with or membership with such enabling organization. |

PRS objects to Point's definition because it requires a list of <u>all</u> the benefits offered by the enabling organization to a consumer who is a member of the organization. But the invention would not work as intended if a list of all the benefits enabled by each enabling organization were not stored in the computer system.   The problem that the invention is designed to solve is the difficulty that a consumer has in sorting through the multitude of discounts and other benefits enabled by the various organizations of which the consumer is a member when planning a particular purchase. The patent explains the problem as follows:

> "The number and nature of the discounts and benefits made available to consumers through such organizations, as well as the timing restrictions and special conditions often applicable to such discounts and benefits, has resulted in a situation where their potential usefulness has been greatly diminished. The reason for this is that it is quite difficult for the average busy individual to maintain a record and cross-reference the multitude of benefits and discounts available in a manner which will allow such benefits to be easily ascertained, and thereby used, when the consumer in fact intends to purchase a particular type of goods or services." ('822 patent, Col. 1, lines 50-60).

A computer system that does not store information as to <u>all</u> the benefits available to the consumer as a result of his membership in a particular enabling organization would not solve this problem.

The prosecution history supports Points' interpretation. The examiner, in explaining his reasons for allowance, stated that there was "no suggestion or disclosure in the prior art of a

18

separate unrelated entity which maintains records on customers and third party enabling

organizations as well as benefits offered by said organizations for the purpose of informing

customers of __all__ benefits relevant to a purchase plan which are available on the basis of the

customer's association with at least one of the third party enabling organizations." (*See* Collins

Decl., Exh. 1, page 3). Thus, the examiner recognized that the purpose of the invention was to

inform consumers of "all" benefits enabled by the pertinent "enabling organizations" relevant to

the consumer's purchase plan.

Accordingly, Points' proposed definition is supported by the purpose of the invention as

described in the patent and by the prosecution history. Points' definition should, therefore, be

adopted.

### (g)    Benefit correlation information

| Points proposed definition: | PRS's proposed definition: |
|---|---|
| Detailed information for each "benefit" offered to a consumer as a result of the consumer's affiliation or membership in a particular "enabling organization" sufficient to enable a processor to determine whether a particular "benefit" is applicable to a particular "purchase plan." | Information about specific "benefits" offered to a consumers by a particular enabling organization. |

We do not understand PRS's objection to Points' proposed definition of "benefit

correlation information."  PRS admits on page 6 of its opening brief that the '822 patent teaches

that such correlation information means "detailed information provided for each benefit offered

by an enabling organization which permits the CPU [Central Processing Unit of the computer

system] to determine whether a particular benefit may of use to a particular consumer."  The

purpose of the purchase planning system claimed in the '822 patent is to determine whether any

19

particular "benefits" available to a consumer as a result of his membership in any "enabling organization" is applicable to a particular purchase plan. Points' proposed definition is consistent with the purpose of the invention and is fully supported by the written description. *See* Points opening brief, pages 23-25.  PRS's definition, on the other hand, is overly general and vague, and unlikely to be helpful in the context of any infringement analysis.

## **CONCLUSION**

For the above stated reasons and the reasons set forth in Points' opening brief, we respectfully submit that Points' proposed definitions of claim terms should be adopted.

Dated:                                             New York, New York
March 9, 2011

                                                           COWAN, LIEBOWITZ & LATMAN, P.C.

                                                           /s/ Catriona M. Collins
                                                           Michael F. Maschio (mfm@cll.com)
                                                           Mark Montague (mxm@cll.com)
                                                           Eric J. Shimanoff (ejs@cll.com)
                                                           Catriona M. Collins (cmc@cll.com)

                                                           1133 Avenue of the Americas
                                                           New York, New York 10036-6799
                                                           (212) 790-9200

                                                           Attorneys for Defendant/Counterclaim-Plaintiff
                                                           Points International Ltd.