1

2

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

3
4
5
6

Jean-Marc Zimmerman
Law Offices of Jean-Marc Zimmerman LLC
226 St. Paul Street
Westfield, NJ 07090
Tel:  (908) 654-8000
Fax: (908) 654-7207
jmzimmerman@lawofficesjmz.com

7

Attorneys for Plaintiff Program Rewards Solutions LLC
and Counterclaim-Defendant Bernard R. Baker, III

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

----------------------------------------------------------------- x
PROGRAM REWARDS SOLUTIONS LLC,

                Plaintiff,

      -against-

POINTS INTERNATIONAL LTD.,

                Defendant.
----------------------------------------------------------------- x
POINTS INTERNATIONAL LTD.,

                Counterclaim-Plaintiff,

      -against-

PROGRAM REWARDS SOLUTIONS LLC and
BERNARD R. BAKER, III,

                Counterclaim-Defendants.
----------------------------------------------------------------- x

10 Civ. 1561 (RJS) (HBP)

PLAINTIFF PROGRAM REWARDS SOLUTIONS LLC AND COUNTER-CLAIM
DEFENDANT BERNARD R. BAKER III'S REBUTTAL CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................. 1

II.     APPLICABLE LEGAL STANDARDS ................................................................ 3

III.    PROGRAM REWARDS'S CLAIM CONSTRUCTION SHOULD BE ADOPTED........ 4

        A.      Benefit ............................................................................................................ 4

        B.      Benefit Correlation Information........................................................................ 7

        C.      Consumer Purchase Plan ................................................................................. 9

        D.      Consumer Information...................................................................................... 11

        E.      Enabling Organization ..................................................................................... 12

        F.      Enabling Organization Information................................................................... 16

        G.      Goods and Services Providers.......................................................................... 17

V.      CONCLUSION .................................................................................................... 18

1

# TABLE OF AUTHORITIES

**Page(s)**

2

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359, 1366 (Fed. Cir. 2002) ....................................................... 3

3

*Digital Biometrics, Inc. v. Identix, Inc.*,
  149 F.3d 1335, 1344 (Fed. Cir. 1998) ...................................................... 3

4

5

*Gillette Co. v. Energizer Holdings, Inc.*,
  405 F.3d 1367, 1374 (Fed. Cir. 2005) .................................................3, 14

6

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
  175 F.3d 985, 989 (Fed. Cir. 1999) ......................................................... 3

7

8

*K-2 Corp. v. Salomon S.A.*,
  191 F.3d 1356, 1362-63 (Fed. Cir. 1999) ................................................ 3

9

*Kapusta v. Gale Corp.*,
  No. 05-1091, 2005 U.S. App. LEXIS 24651 (Fed. Cir. Nov. 15, 2005) ............................. 10

10

11

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898, 906 (Fed. Cir. 2004) ..................................................... 1, 3

12

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996)................................. 3, 4

13

14

*Manual of Patent Examining Procedure*, §1302.14(V) ...............................................5, 14

15

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
  133 F.3d 1473, 1478 (Fed. Cir. 1998) .................................................... 4

16

*Nazomi Communications, Inc. v. Arm Holdings, PLC*,
  403 F.3d 1364, 1368 (Fed. Cir. 2005) ..................................................... 3

17

18

*Nystrom v. Trex Co.*,
  424 F.3d 1136, 1142 (Fed. Cir. 2005) .................................................... 4

19

*Pfizer Inc. v. Teva Pharms. USA, Inc.*,
  429 F.3d 1364, 1372-73 (Fed. Cir. 2005) .................................................. 4

20

21

*Phillips v. AWH*,
  415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................................................. 3, 4

22

*Salazar v. Procter & Gamble Co.*,
  414 F.3d 1342, 1347 (Fed. Cir. 2005) ..................................................6, 14

23

24

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
  299 F.3d 1313, 1324 (Fed. Cir. 2002) ..................................................... 3

25

*Ventana Med. Sys. v. Biogenex*,
  473 F.3d 1173 (Fed. Cir. 2007) ........................................................... 1

26

27

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576, 1582 (Fed. Cir. 1996) ................................................... 3, 4

28

## I.    **INTRODUCTION**

Pursuant to the Court's July 7, 2010 Scheduling Order, Plaintiff Program Rewards Solutions LLC and Counterclaim-Defendant Bernard R. Baker, III (hereinafter collectively "Program Rewards" or "Plaintiff") submit this rebuttal brief in response to Points International Ltd.'s (hereinafter "Points International" or "Defendant") opening claim construction brief with respect to certain terms in United States Patent No. 5,864,822 ("the '822 Patent") that is the subject of this action.

Points International's proposed constructions are legally wrong and incorrect in one major common respect.  In an effort to inject some additional claim limitations and avoid infringement, Defendant seizes upon some marginal features set forth in the written description of various embodiments--or introduces some features that are <u>not described anywhere in the specification</u>-- and insists that they be read into the claims as part of claim construction.

The Federal Circuit addressed the issue of when it is, and when it is not, appropriate to read a limitation from a preferred embodiment into a claim in *Ventana Med. Sys. v. Biogenex*, 473 F.3d 1173 (Fed. Cir. 2007).  It rejected the approach advocated by Defendant in no uncertain terms:

> "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" . . . "[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." . . .  While the fact that the disclosed embodiments are limited can assist in interpreting claim language, the mere fact that the '861 patent discloses embodiments in which the reagent container is also the reagent dispenser does not in and of itself mean that the method claims at issue are limited to the disclosed embodiments.

*Ventana,* 473 F.3d at 1180-81 (internal citations omitted); *accord Liebel-Flarsheim Co. v. Medrad*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("[T]his court has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.").  Contrary to the controlling law, Points International: (a) ignores the plain meaning of the words in the claims; (b) disregards express and unambiguous definitions of

the key claim terms at issue provided in the '822 Patent specification; (c) advocates interpretation that contradicts the description of the preferred embodiments in the '822 Patent; and (d) misrepresents the prosecution history of the '822 Patent in an attempt to introduce into patent claims some extraneous limitations and avoid infringement.

In addition, Points International tries to divert this Court's attention to matters that have no relevance to the proper claim construction. Points International appears to argue not against Plaintiff's claim construction that Plaintiff provided to Points International well in advance of the opening claim construction briefs, and which were proposed in Plaintiff's opening *Markman* brief, but instead argues against some earlier preliminary claim constructions provided as part of initial disclosures. Defendant neglects to inform the Court that Defendant itself changed its claim construction of at least two key patent claim terms just weeks before the submission of its opening claim construction briefs. Specifically, Points International changed its proposed claim construction for the claim terms "benefit" and "goods and services provider" as late as February 4, 2011. *See* Rebuttal Declaration of Jean-Marc Zimmerman ("Zimmerman Rebuttal Decl."), ¶2. Thus, Defendant itself engaged in some last-minute revisions and modification of its proposed claim constructions. It is disingenuous for Defendant to make irrelevant accusations against Plaintiff's clarifications of its earlier claim constructions, but mention nothing about Defendant's own revisions of its proposed constructions. Irrespective of all these revisions, it is not uncommon for the parties to revise and clarify their early claim constructions. It is precisely the purpose of the claim construction briefing to obtain the final proposals for claim construction of the key patent terms from all parties and resolve the issues based on those proposed constructions; not some earlier correspondence between parties.

In view of the controlling precedent of the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"), Program Rewards' claim constructions set forth in its claim construction briefs should be adopted by the Court in connection with the claim terms at issue.

## II.  <u>APPLICABLE LEGAL PRINCIPLES</u>

To determine the proper meaning of a claim term, a court must "consider the so-called intrinsic evidence, *i.e.*, the claims, the written description, and, if in evidence, the prosecution history." *Digital Biometrics, Inc. v. Identix, Inc.,* 149 F.3d 1335, 1344 (Fed. Cir. 1998).  If there is a plain and ordinary meaning of the claim language, then this meaning usually defines the scope of the claims unless the patentee has <u>explicitly disclaimed or clearly disavowed</u> this meaning in the specification or prosecution history.  *Liebel-Flarsheim Co.,* 358 F.3d at 906 (emphasis added).

In construing the claim pursuant to a *Markman* proceeding, it is well settled that the language of the claim defines the boundary of its scope. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002); *Phillips v. AWH Corp.*, 415 F.3d 1303,1312 (Fed. Cir. 2005) ("It is a 'bedrock principle' of patent law that 'the claims of the patent define the invention to which the patentee is entitled the right to exclude.'")  The Federal Circuit "has cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification." *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1374 (Fed. Cir. 2005);  *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (*en banc*), *aff'd,* 517 U.S. 370 (1996) ("The written description part of the specification itself does not delimit the right to exclude.  That is the function and purpose of claims.")  The Federal Circuit has stated that "[i]t is an old axiom that patents 'are to receive a liberal construction, and … are, if practicable, to be so interpreted as to uphold and not to destroy the right of the inventor.'" *Nazomi Communications, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1368 (Fed. Cir. 2005) (citations omitted.)

The terms used in the claims bear a heavy presumption that they mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant art. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996), *citing*, *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002); *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1362-63 (Fed. Cir. 1999); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d

985, 989 (Fed. Cir. 1999). The Federal Circuit has repeatedly explained that claim terms should generally be given their ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the art at the time of the invention – *i.e.*, the effective date of the filing of the patent application. *Pfizer Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1372-73 (Fed. Cir. 2005); *Phillips*, 415 F.3d at 1313 (citations omitted).

The language of the claims is of primary importance, but they do not stand alone. *Phillips*. 415 F.3d at 1315. The skilled person is deemed to read the claims in the context of the entire patent, including the specification. *Id.*; *Nystrom v. Trex Co.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005) (*quoting Markman*, 52 F.3d at 979) ("[T]he claim terms 'must be read in view of the specification, of which they are a part.'"); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998) ("The best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history."); *Vitronics*, 90 F.3d at 1582 ("Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term."). The Federal Circuit has cautioned against importing limitations from the specification into the patent claims, particularly if the limitation is not consistent with how the skilled person would understand the claim terms. *See Phillips*, 415 F.3d at 1323.

## III.   PROGRAM REWARDS'S CLAIM CONSTRUCTION SHOULD BE ADOPTED

The construction of the following claim terms in claims 1, 9 and 17 of the '822 Patent is being contested by the parties.

### A.   "Benefit"

| Plaintiff's (Program Rewards') Proposed Construction | Defendant's (Points International's) Proposed Construction |
|---|---|
| Discounted rate or any other added value received by a consumer in addition to those otherwise offered to the general public. | A discounted rate or other added value provided by a third party supplier of products or services that is offered to a consumer in addition to what is otherwise offered to the general public, only as a result of the consumer's association or |

| | membership in an "enabling organization" |
|---|---|

Plaintiff's proposed construction is not only supported by the plain meaning of the claim term, but is actually **expressly defined** in the patent specification.  *See* col. 3, lines 18-23 of the '822 Patent.  The specification provides the following express definition for this term:

> As used herein, the term 'benefits' should be understood to mean any discounted rate or any other added value received by a consumer in addition to those otherwise offered to the general public.

'822 Patent, col. 3, lines 18-23.

This is precisely the definition proposed by Plaintiff.  In col. 1, lines 18-42, of the '822 Patent specification, the patentee provides examples of discounts and benefits.  Subsequently, at col. 2, line 24, when describing the "summary of the invention," the specification includes examples of "discounts and benefits" within the definition of the term "benefits."  Subsequently, in the description of the embodiments, the '822 Patent specification again, **for the second time,** repeats the above-referenced definition of the term "benefits."  *See* '822 Patent, col. 4, lines 33- 39.

Contrary to Defendant's arguments, the above definition for the term "benefits" was never explicitly disclaimed, clearly disavowed or redefined during prosecution of the '822 Patent.  All patent claims were <u>allowed</u> by the Patent Examiner without any Office Action, after the initial submission of the patent application and claims.  In the Notice of Allowance, the Examiner made certain notes about his views about the patent, but <u>the applicant never</u> made any amendments or arguments to limit the scope of the claims, redefine any claim term or disavow any subject matter to gain allowance.   "The examiner's statement of reasons for allowance is the personal opinion of the examiner as to why the claims are allowable [and t]he examiner's statement should not create an *estoppel*."  Manual of Patent Examining Procedure ("MPEP") §1302.14(V).  Only applicant's statements should create an *estoppel*.  *Id.* The failure of applicant to comment on the examiner's

statement of reasons for allowance should not be treated as acquiescence to the examiner's statement.  *Id.* (*citing Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005)). Furthermore, none of the comments made by the Examiner make any reference or provide any definition to the term "benefits," and have absolutely no reference to "membership," which Defendant proposes to include into the claim construction.

In the Notice of Allowance, the Examiner stated as follows:

The following is an examiner's statement of reasons for allowance:

Independent claims 1, 9, and 17 disclose a system for planning purchases by permitting a consumer to more effectively make use of a variety of available benefits from a plurality of goods and service providers, wherein said benefits are offered specifically to those consumers having an association with one or more third party enabling organizations.  The prior art admits arrangements whereby travel clubs will have affiliations with multiple goods and service providers and will find the lowest rates for a consumer's planned itinerary.  However, there is no suggestion or disclosure in the prior art of a separate unrelated entity which <u>maintains records on consumers and third party enabling organizations as well as benefits offered by said organizations</u> for the purpose of informing customers of all benefits relevant to a purchase plan which are <u>available on the basis of the customer's association with at least one of the third party enabling organizations</u>.  For this reason the claims are allowed.  The remaining dependent claims, 2-8, and 10-16 are likewise allowed for the same reason.

*See* Zimmerman Rebuttal Decl., Exhibit 2 (Notice of Allowance, dated Feb. 7, 1998) (emphasis added).  First, as discussed above, there is no mentioning of any "membership," which Defendant advocates to incorporate into the patent claim.  Second, there is no suggestion by the Examiner that the "benefits" are offered <u>only</u> as a result <u>of the consumer's association or membership</u> (referring to any specific consumer) in an "enabling organization."  All it states is that the prior art does not suggest a third-party entity which maintains records on consumers and third party enabling organizations and that the offered benefits are "<u>for the purpose</u> of informing customers of all benefits relevant to a purchase plan…"  Third, the above statement simply suggests that the system that "maintains records" on consumers, third party enabling organizations and benefits offered by those organizations is not described in the prior art.  There is no support for Defendant's construction that the "benefits" must take

into account the particular consumer's affiliation or membership with any particular "enabling organization."  On the contrary, the "goods and services" provider could have multiple agreements with different enabling organizations.  Furthermore, the "goods and services" provider might not know about any specific consumer, or his or her affiliations with any particular "enabling" organization.  Thus, even if the Examiner's statement in the Notice of Allowance were to be considered as an explicit disclaimer or clear disavowal or limitation on the scope of the patent claims, it would not support Defendant's proposed claim construction.

## B.    "Benefit Correlation Information"

| Plaintiff's (Program Rewards') Proposed Construction | Defendant's (Points International's) Proposed Construction |
|---|---|
| Information about specific "benefits" offered to consumers by a particular enabling organization.<br><br>*Additional Clarification*:<br><br>The information is offered to consumers by virtue of their association with an enabling organization. | Detailed information for each "benefit" offered to a consumer as a result of the consumer's affiliation or membership in a particular "enabling organization" sufficient to enable a processor to determine whether a particular "benefit" is applicable to a particular "purchase plan." |

        Plaintiff's construction is taken straight from the definition provided in the '822 Patent specification.  There is no ambiguity in this definition or any alternative definition.   Defendant's attempts to incorporate some extraneous limitations into this claim term are improper and contrary to the controlling legal principles.

        Col. 5, lines 49-61 of the '822 Patent specification expressly states that "[t]hus, for a particular benefit listed in a benefit file 26, a benefit correlation data file (or sub-file) 32 would include information such as geographic locations of benefit availability, time periods, limits, conditions or other such factors necessary to determine whether the particular benefit listed in benefit file 26 will be of potential usefulness for a particular consumer . . . As an example, if benefit

1   lA in enabling organization benefit file 26 is a discount hotel rate for a particular hotel chain, it

2   would be preferable for benefit correlation data file 32 to contain information regarding the specific

3   cities where the hotels are located and any time limitations or other restrictions associated with

4   obtaining the benefit."

5           This "benefits correlation information" includes descriptions about each benefit offered by

6   the enabling organization and can then be utilized by the computerized system described in the '822

7   Patent to determine the availability of a particular "benefit" to a particular consumer or user.  *See*

8   Col. 4, lines 45-50, describing the preferred embodiment ("For the purposes of the present

9   invention, "correlation information" shall be understood to mean **detailed information provided**

10  **for each benefit offered by an enabling organization** which permits the CPU to determine

11  whether a particular benefit may be of use to a particular consumer") (emphasis added).     Col. 5,

12  lines 44-49, 49-61 of the specification states that " Correlation file 18 contains specific information

13  necessary for CPU 6 to determine whether a benefit available to a particular consumer by virtue of

14  their association with an enabling organization 28 will have some potential usefulness to a

15  consumer contemplating a particular purchase of goods or services."

16          The specification of the '822 Patent further describes the following use of the "benefit

17  correlation information" and comparison of this data to the purchase and travel plans information:

18          "…search the applicable enabling organization files 28 to determine
19          whether any benefits offered by the enabling organization (and to which the
20          consumer was a member) were available relating to discount air fares. In the event
21          the enabling organization included discount air fares, a benefit correlation file
22          32 would then be checked by processor 6 **to determine whether such travel**
23          **benefits were applicable for a specific itinerary e.g. between the cities in**
24          **which the consumer intended to travel, the particular time frames for travel,**
25          **etc.**"  Col. 6, lines 9-19 of the '822 Patent.

26          "In this manner, a user may review the alternative benefit information to
27          choose the combination of cost, convenience and preferences most suitable for a
28          particular consumer. Generally speaking, the input data required for processor 6
            **to determine whether a particular benefit is available to a particular**
            **consumer would depend upon the particular type of services or goods the**
            **consumer wished to purchase.**" Col 6, lines 38-45 of the '822 Patent.

"Wherein the purchase plan is compared to benefit correlation data to determine whether restrictions and limitations on use of the particular benefit allow the benefit to be obtained by the consumers for a given set of purchase plans." Col 7, Line 56-59 of the '822 Patent.

"In a preferred embodiment, the system includes various display formats for correlated benefits information. The system is designed to identify benefits which are available for a particular travel itinerary or other purchase." Col 6, line 19-23 of the '822 Patent.

These parts of the specification describe how the "benefits correlation information" is used in connection with a particular "travel itinerary" or "purchase plan," and they clearly indicate that the "benefit correlation information" itself does not contain travel itinerary or purchase plan data, and that such definition would contradict the specification.

Furthermore, other aspects of the Defendant's proposed claim construction have no support in the specification and only inject ambiguity and render the proposed claim element indefinite. It is unclear what constitutes the necessary quantity and type of information that is "sufficient" to enable a processor to determine whether a "particular" benefit is applicable to a "particular" purchase plan. Moreover, the step for analyzing the "benefit correlation information" and comparing it to the particular "purchase plan" is expressly set forth in a different part of the claims at issue (see element D in claims 1 and 9, and element C in claim 17). Thus, there is no reason to construe "benefit correlation information" to include extraneous references to "processor" or "purchase plan" or to include some indefinite reference to "sufficient" information. Accordingly, Plaintiff's proposed construction--rather than Defendants—for this claim term should be adopted.

C.    "Consumer Purchase Plan"

| Plaintiff's (Program Rewards') Proposed Construction | Defendant's (Points International's) Proposed Construction |
|---|---|
| Purchase plans relating to any type of goods or services. | A proposed travel itinerary for a future trip, or data sufficient to identify a specific type of good or service for possible future purchase by the |

| | consumer and preferred brands, price range, time period when the purchase will occur or geographical area where the consumer is willing to travel to make the purchase. |
|---|---|

Plaintiff's construction is expressly supported by the patent specification of the '822 Patent and comports with the plain meaning of the claim term at issue.  The specification expressly states at col. 7, line 26 of the '822 Patent that "[t]he purchase plans can **relate to any type of goods or services**." (emphasis added).  The specification then provides examples of a particular type of goods and services that may be used in the preferred embodiment of the patented system.  *See* '822 Patent, col. 7, lines 25-37) ("In a preferred embodiment…")

Defendant's proposed construction for this term not only contradicts the above express definition of the term, but also impermissibly limits it to some specific examples of the "purchase plans" provided in connection with the preferred embodiment.   This is clearly contrary to the well-established Federal Circuit law on this issue.  It is impermissible for a court to confine claims to the disclosed embodiments. *See Phillips*, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments"); *Kapusta v. Gale Corp*., No. 05-1091, 2005 U.S. App. LEXIS 24651, at *8 (Fed. Cir. Nov. 15, 2005) (claim term not limited to particular numerical dimensions because there was no indication in the specification that the embodiment in the figures or description including size limitations was meant to be the only embodiment).

The specification of the '822 Patent does not limit what types of goods or services can comprise or be the subject of a "consumer purchase plan".  On the contrary, it expressly disclaims such proposed limitations. Nor do the claims or prosecution history include any such limitations. None are cited by the Defendant.

10

1    Furthermore, Defendant's proposed claim construction for this term only injects unnecessary

2  indefiniteness and ambiguity by referring to data that must be "<u>sufficient to identify a specific type of</u>

3  <u>good or service for possible future purchase</u>."  The claim construction that renders a claim term vague,

4  indefinite or ambiguous is disfavored.   Defendant did not provide any reason why the Court should

5  disregard the express statements in the patent specification that this claim term is "relating to **<u>any</u>** type

6  of goods or services," and why it should limit this claim term to some examples of the goods and

7  services described in connection with the preferred embodiment.   Accordingly, Plaintiff's proposed

8  construction of this term should be adopted.

9

10  **D.    "<u>Consumer Information</u>"**

11

| *Plaintiff's (Program Rewards') Proposed Construction* | *Defendant's (Points International's) Proposed Construction* |
|---|---|
| Information that includes name, number, social security number, credit card account number, or any other combination of letters and number which uniquely identifies a particular individual. | An identifying name or number for a particular consumer, associated with an identifying list of "enabling organizations" of which the particular consumer is a member or with whom the consumer has an affiliation. |

17

18    Plaintiff's construction is expressly supported by the patent specification of the '822 Patent.

19  Col. 5, lines 11-16 of the specification expressly states that "[i]n a fully operational system, the

20  consumer identification information could be a social security number, credit card account number,

21  **<u>or any other combination of letters and numbers which uniquely identify a particular</u>**

22  **<u>individual authorized to use the system</u>**."  *See also* col. 5, lines 17-26 of the '822 Patent

23  specification (emphasis added).  This plainly includes any unique name, number or a combination

24  of both, which **<u>identifies the individual consumer</u>**.

25    The definition in the '822 Patent specification that Defendant sites for support of its claim

26  construction only proves the infirmity of Defendant's position.  Defendant argues (see p. 22 of Def.

27

28

1  brief) that the patent defines "consumer information" as "An identifying name or number for a

2  particular consumer".

3  Defendant's proposed claim construction improperly limits the claim to <u>only the name or</u>

4  <u>number</u> for a particular consumer, where the specification expressly contemplates that it could be a

5  social security number, credit card account number, **<u>or any other combination of letters and</u>**

6  **<u>numbers which uniquely identify a particular individual</u>**.  This transparent attempt to limit the

7  claim by reading certain preferred embodiments out of the patent is not permissible and has no support

8

9  in the patent specification or prosecution history of the '822 Patent.

10  Plaintiff does not disagree that "consumer information" may also identify "one or more enabling

11  organizations to which an individual consumer has an affiliation."  *See* '822 Patent, col. 2, lines 30-33.

12  To the extent that this additional description is intended to be included, Plaintiff would not oppose an

13  alternative claim construction with the following addition to the Plaintiff's proposed construction:

14

15  "Information that includes name, number, social security number, credit card
    account number, or any other combination of letters and number which uniquely
16  identifies a particular individual <u>and identifying one or more enabling organizations</u>
    <u>to which an individual consumer has an affiliation</u>."

17  **E.**     **<u>"Enabling Organization"</u>**

18

19

| *Plaintiff's (Program Rewards') Proposed Construction* | *Defendant's (Points International's) Proposed Construction* |
|---|---|
| An enabling organization can be any organization or group which makes available, for specific individuals who are members or associated with such enabling organization, special benefits which are not available to the general public.<br><br>*Additional Clarification:*<br><br>It can be the same or different organization or a part of the group that provides goods and services, or a part of the group together with a database provider. | An organization or group, other than the consumer, the database provider or the goods and services provider, which makes available to its members, or to other persons who are associated with it, "benefits" that are provided by third party suppliers of goods or services based on an arrangement between the "enabling organization" and the third party supplier. |

28

1     Plaintiff's construction is expressly defined and supported by the specification.

2     Col. 5, lines 30-38 of the specification states that "[e]nabling organization file 16 is

3     preferably comprised of a plurality of enabling organization benefit files 26 for each separately

4     identified enabling organization 28. Each enabling organization 28 can be identified either by a

5     name or number which has been defined to identify that particular organization. Each enabling

6     organization benefit file 26 includes a benefits list 30 defining specific benefits enabled by a

7     particular enabling organization 28."

8

9     The patent specification then expressly states: "As noted above, an enabling organization

10    can be any organization or group which makes available, for specific individuals who are members

11    or associated with such enabling organization, special benefits which are not available to the general

12    public." '822 Patent, col. 5, lines 38-42 (emphasis added).

13    The main point of disagreement between the parties appears to be whether the term

14    "enabling organization" should be construed to be an entity that must be distinct from (a) the

15    database provider, and (b) the goods and services provider.   Defendant concedes that the patent

16    specification suggests that the database provider could also act as an "enabling organization" (*see*

17    Def. brief, p. 14, fn. 2).  As acknowledged, in col. 7, lines 63-67, the '822 Patent specification

18    expressly provides that "the operator of the database could negotiate directly with the providers of

19    goods and services to offer discounts to consumers participating in the database. In such cases, the

20    organization operating the database would itself be the enabling organization." However, Defendant

21    argues that this particular embodiment of the patented system was disclaimed during prosecution.

22    As discussed above, in connection with claim element "benefits" no such disclaimer or clear

23    surrender ever took place.

24

25    First, all patent claims were allowed by the Patent Examiner without any Office Action,

26    after the initial submission of the patent application and claims.  In the Notice of Allowance, the

27    Examiner made certain notes about his views about the patent, but the applicant never made any

28

amendments or arguments to limit the scope of the claims, redefine any claim term or disavow any subject matter to gain allowance.   Defendant seems to make a big issue out of the fact that Mr. Baker did not provide a response to the Examiner's comments (see Def. br. at 15).   This is simply misleading.   "The failure of applicant to comment on the examiner's statement of reasons for allowance should not be treated as acquiescence to the examiner's statement.  MPEP §1302.14(V); *see also Salazar,* 414 F.3d at 1347.  It is understood that in order to find surrender of a subject matter during patent prosecution, the amendment and/or surrendering arguments must be provided by the applicant. The specification must contain "words or expressions of manifest exclusion" or "explicit disclaimers" in order for the patent to surrender claim scope. *Gillette*, 405 at 1374; MPEP §1302.14(V) ("The examiner's statement should not create an *estoppel*. Only applicant's statements should create an *estoppel*.")  Furthermore, none of the comments made by the Examiner indicate that the "enabling organization" must be different from the "database provider."   In the Notice of Allowance, the Examiner stated as follows:

> The following is an examiner's statement of reasons for allowance:
>
> Independent claims 1, 9, and 17 disclose a system for planning purchases by permitting a consumer to more effectively make use of a variety of available benefits from a plurality of goods and service providers, wherein said benefits are offered specifically to those consumers having an association with one or more third party enabling organizations.  <u>The prior art admits arrangements whereby travel clubs will have affiliations with multiple goods and service providers and will find the lowest rates for a consumer's planned itinerary</u>.  However, there is no suggestion or disclosure in the prior art of a separate unrelated entity which maintains records on consumers and third party enabling organizations as well as benefits offered by said organizations for the purpose of informing customers of all benefits relevant to a purchase plan which are available on the basis of the customer's association with at least one of the third party enabling organizations.  For this reason the claims are allowed.  The remaining dependent claims, 2-8, and 10-16 are likewise allowed for the same reason.

*See* Zimmerman Rebuttal Decl., Exhibit 2 (Notice of Allowance, dated Feb. 7, 1998) (emphasis added).  The Examiner's comments draw a distinction between the patent

claims and the alleged prior art, arguing that the latter included arrangements where

travel clubs (enabling organizations) had affiliations with multiple goods and services

providers and offered the lowest rates to its members (consumers).   The preambles to

claims 1 and 17 do not even mention "database provider(s)" and only reference

"consumer," "a plurality of goods and services providers" and a "third party enabling

organization(s)."  Thus, even if the Examiner's statement in the Notice of Allowance

were to be considered as an explicit disclaimer or clear disavowal or limitation on the

scope of the patent claims, it would only limit the claims 1 and 17 to differentiate

between the "customer," "goods and services providers," and "enabling organization(s)."

This distinction between "goods and services providers" and "enabling organization" is

also reflected in the prior art description set forth in the '822 Patent specification:

> It is quite common today for many types of organizations products, may be made
> aware of special discounts or benefits on very short notice to make available
> exclusively to their members, special discounts and benefits. Often, these
> discounts and benefits are not provided directly through the membership
> organization, but are instead obtained through third-party suppliers of goods and
> services. In such cases, the membership organization to which individuals belong,
> acts as an "enabling" type of organization in the sense that it does not directly
> provide a benefit or discount, but instead enables discounts or benefits available
> through a third party. A very common example of this type of arrangement may
> be found in the case of certain credit card companies which will offer to their
> cardholders certain discounts and benefits when such cardholders purchase goods
> and services from third-party entities such as airlines, rental car companies,
> restaurants, and particular retail stores. As a second example, if a consumer holds
> a credit card from a particular bank, the bank may offer extended warranties or
> discounted prices when a consumer purchases brand X products, or purchases
> products from a particular retail store. As third example, members of a particular
> professional organization may be entitled to a 10% discount at all hotel facilities
> operated by a particular hotel franchise or chain.

'822 Patent, col. 2, lines 16-37.   Thus, there is no reason to construe  "enabling organization" to

mean anything other than what it is expressly defined as in the '822 Patent specification.  In the

event that the Court determines that the Examiner's comments in the Notice of Allowance, without

15

patentee's response, change or modify the scope of the defined term "enabling organization,"

Plaintiff would not object to changing its proposed claim construction and clarifying as follows:

> An enabling organization can be any organization or group, <u>other than the consumer or provider of goods and services</u>, which makes available, for specific individuals who are members or associated with such enabling organization, special benefits which are not available to the general public.
>
> *Additional Clarification:*
> It can be the same or different organization or a part of the group that is a database provider.

**F.    "Enabling Organization Information"**

| Plaintiff's (Program Rewards') Proposed Construction | Defendant's (Points International's) Proposed Construction |
| --- | --- |
| Data relating to an enabling organization or group of organizations, including one or more benefits offered to a consumer as a result of the consumer's affiliation with or membership with such enabling organization. | Information that includes, for each "enabling organization", a list of all the "benefits" offered to a consumer as a result of the consumer's affiliation or membership in the "enabling organization." |

Plaintiff's construction is expressly supported in multiple places in the '822 Patent specification.  *See* col. 4, lines 30-33,; col. 5, lines 56-58; and col. 2, lines 27-33 of the '822 Patent specification. There is no requirement or support for Defendant's proposed construction, which requires that the enabling organization information must contain **<u>all</u>** "benefits" offered to a particular consumer.   On the contrary, the specification expressly provides that "[t]he second category of information, relating to enabling organizations, generally includes a list of certain specific organizations which make available **<u>one or more benefits for consumers associated with such enabling organization</u>** … <u>A list of the one or more benefits provided by each of the enabling organizations is associated with each such enabling organization.</u>" *See* '822 Patent, col. 4, lines 30-33,; col. 5, lines 56-58 (emphasis added).  This clearly defines this term and Plaintiff proposes to adopt this definition as a claims construction for this term.  Defendant does not offer any legitimate legal reason why this definition should be disregarded or ignored.  Accordingly, Plaintiff's proposed construction of this term should be adopted.

G.      **Goods and Services Providers**

| Plaintiff's (Program Rewards') Proposed Construction | Defendant's (Points International's) Proposed Construction |
|---|---|
| Entities or individuals that provide goods or services. | A third party supplier of products or services who is not an enabling organization and is not the database provider. |

Plaintiff does not believe that this term needs to be construed. However, to the extent it needs to be construed at all by the Court, it should be construed as Plaintiff suggested.

Plaintiff's construction is supported by the plain meaning of the claim term as well as by the express provisions in the '822 Patent specification.  The specification clearly states that the invention is not limited to any particular "goods or services."  In col. 2, lines 53-55, it states that "[s]ignificantly, **while the system may be used with any type of goods or services a consumer might wish to purchase**, it is particularly advantageous in connection with travel planning …"; *see also* col. 6, lines 58-61 (describing purchase of home appliances using the system claimed in the '822 Patent); col. 7, line 26 of the '822 Patent ("[t]he purchase plans can **relate to any type of goods or services**.") (emphasis added).

As discussed above in connection with the claim term "enabling organization," there was never any clear surrender or disavowal of the claim terms or redefining of any claim terms during prosecution of the '822 Patent.   Furthermore, as further discussed in connection with the claim term "enabling organization" above, there is no requirement that the "goods and services provider" must be different from a "database provider." In the event that the Court determines that the Examiner's comments in the Notice of Allowance, without patentee's response, change or modify the scope of the defined term "goods and services provider," Plaintiff would not object to changing its proposed claim construction as follows:

> Entity or individual that provides goods or services and is not an enabling organization.

# IV.   CONCLUSION

For the foregoing reasons, Plaintiff Program Rewards respectfully submits that its proposed claim constructions be adopted.

By:/s/Jean-Marc Zimmerman
Jean-Marc Zimmerman
Law Offices of Jean-Marc Zimmerman LLC
226 St. Paul Street
Westfield, NJ 07090
Tel:  (908) 654-8000
Fax: (908) 654-7207
jmzimmerman@lawofficesjmz.com

Attorneys for Plaintiff Program Rewards
Solutions LLC and Counterclaim Defendant
Bernard R. Baker, III

Date:  March 9, 2011
        Westfield, New Jersey