UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

No. 10 Civ. 1561 (RJS)

PROGRAM REWARDS SOLUTIONS LLC,

Plaintiff,

VERSUS

POINTS INTERNATIONAL LTD.,

Defendant.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/13/2012

MEMORANDUM AND ORDER
January 12, 2012

## I. INTRODUCTION

Plaintiff Program Rewards Solutions LLC ("Program Rewards") brings this action against Defendant Points International Ltd. ("Points"), alleging that Defendant's web-based system for managing customers' benefits -- such as frequent flyer miles and hotel points -- infringes on its patent. Now before the Court are the parties' cross-briefs on their proposed construction of Plaintiff's patent claims. The following sets forth the Court's construction of the disputed terms.

## II. BACKGROUND[1]

On June 25, 1996, Bernard R. Baker III filed an application for a patent entitled "Benefits Tracking and Correlation System for Use with Third-Party Enabling Organization," with the United States Patent Office. (Def.'s Br. Ex. A at 1 ("'822 Patent").) The patent, which describes a computer system that allows consumers to make more effective use of benefits offered as a result of their memberships in various organizations, was issued on January 26, 1999 as U.S. Patent No. 5,864,822 (id.), and was subsequently assigned to Plaintiff Program Rewards (Pl.'s Br. 1).

On February 24, 2010, Plaintiff filed its complaint in this action, alleging that Defendant's web-based system at www.points.com violates claims 1, 9, and 17

---

[1] In determining the proper construction of the patent claims, the Court has considered the following submissions: Plaintiff Program Rewards Solutions LLC's and Bernard R. Baker's Opening Claim Construction Brief ("Pl.'s Br."); Defendant Points International's Opening Claim Construction Brief ("Def.'s Br."); Plaintiff's Rebuttal ("Pl.'s Opp'n"); and Defendant's Rebuttal ("Def.'s Opp'n"); as well as accompanying materials filed with those submissions.

of the '822 Patent. (Compl. ¶ 10.) At this stage of the proceedings, the parties dispute the construction of the following terms used in the '822 Patent: "benefit," "benefit correlation information," "consumer purchase plan," "consumer information," "enabling organization," "enabling organization information," and "goods and service providers." All of the disputed terms appear in each of the three disputed claims.[2]

### III. DISCUSSION

#### A. Legal Standard

The construction of patent claims, which includes the definition of disputed terms therein, is a legal question to be determined by the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). Claim construction begins with the patent claims themselves, which "define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks and citations omitted). "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." *Id.* at 1313. A technical term in the patent document is given its ordinary meaning, that is, "'the meaning that it would be given by persons experienced in the field of the invention, unless it is apparent from the patent and prosecution history that the inventor used the term with a different meaning.'" *Kwik Prods. Inc. v. Nat'l Express, Inc.*, 356 F. Supp. 2d 303, 315 (S.D.N.Y. 2005) (quoting *Hoescht Celanese Corp. v. BP Chems. Ltd.*, 73 F.3d 1575, 1578 (Fed. Cir. 1996)). "'A patentee, however, can act as his own lexicographer to specifically define terms of a claim contrary to their ordinary meaning." *P3 Int'l Corp. v. Unique Prods. Mfg. Ltd.*, No. 08 Civ. 5086 (DLC), 2009 WL 1424178, at *3 (S.D.N.Y. May 21, 2009) (quoting *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1376 (Fed. Cir. 2006)).

Nevertheless, a person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. A patent is "a fully integrated written instrument, consisting principally of a specification that concludes with the claims. For that reason, claims must be read in view of the specification, of which they are a part." *Id.* at 1315 (internal quotations marks and citations omitted). Accordingly, it is appropriate for a court "to rely heavily on the written description for guidance as to the meaning of the terms." *Id.* at 1317.

The prosecution history -- the communications between the United States Patent and Trademark Office ("PTO") and the patentee -- may be considered if it is in evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Indeed, the prosecution history may be "of critical significance in determining the meaning of the claims," because it includes the applicant's express representations made to persuade the PTO Examiner to approve the patent. *Id.* The prosecution history may also contain "an examination of the prior art" -- the body of information and inventions previously known in the field -- which often indicates what the new invention is *not* intended to cover. *Id.* at 1583. However, the Federal Circuit has warned against relying too heavily on the prosecution history "because [it] represents

---

[2] Claim 17 contains the term "benefits information" rather than "benefit correlation information." *E.g.*, '822 Patent col.12 l.1. Nevertheless, the context of the claim suggests that the two terms are intended to be synonymous.

2

an ongoing negotiation between the PTO and the applicant . . . [and] often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317.

Finally, a court construing a patent claim may consult extrinsic evidence such as dictionaries, treatises, and experts in the relevant field; however, such evidence should carry less weight than the above-discussed intrinsic evidence. *Id.* at 1317. Moreover, resort to extrinsic evidence is improper where the intrinsic evidence is clear. *P3 Int'l Corp.*, 2009 WL 1424178, at *3 (citing *Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1377 (Fed. Cir. 2005)).

### B.  Claim Construction

#### 1.  "Benefit"

The preamble to Claim 1 of the '822 Patent describes "[a] computer system for permitting a consumer to more effectively make use of a variety of available benefits from a plurality of goods and service providers, wherein said benefits are offered specifically to those consumers having an association with one or more third party enabling organizations."  '822 Patent col.9 ll.26-31.  The claim then details how the system analyzes various inputs in order

> to determine whether any enabling organization to which the consumer is affiliated is offering a potentially applicable benefit . . . wherein said benefit includes at least one of a discounted rate and any other value available to the consumer as a result of the consumer's membership in said one or more enabling organizations.

*Id.* col.9 ll.44-49, 53-56.  The other claims refer to "benefits" using similar language.

Plaintiff argues that "benefit" means a "[d]iscounted rate or any other added value received by a consumer in addition to those otherwise offered to the general public." (Pl.'s Br. 5.)  Defendant proposes a construction that defines "benefit" to mean "[a] discounted rate or other added value provided by a third party supplier of products or services that is offered to a consumer in addition to what is otherwise offered to the general public, only as a result of the consumer's association or membership in an 'enabling organization.'" (Def.'s Br. 18.)

Looking first to the claims themselves, the Court notes that the preambles in the disputed claims clearly limit "benefits" to those "offered specifically to those consumers having an association with one or more third party enabling organizations." '822 Patent col.9 ll.29-31.  Elsewhere in the patent, benefits are also specifically qualified in this manner.  A claim preamble is not limiting when it merely states the purpose of the invention.  *See Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346-47 (Fed. Cir. 2002); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006).  However, a preamble may be limiting "when the claim drafter chooses to use both the preamble and the body to define the subject matter of the claimed invention. If the preamble is necessary to give life, meaning and vitality to the claim, then the claim preamble should be construed as limiting." *Allen Eng'g Corp.*, 299 F.3d at 1346 (internal quotation marks and citations omitted).

The Court finds that the language in the preamble of each disputed claim, beginning with "wherein," does not merely state the purpose of the invention but sets forth several important definitions and limitations on the claim.  *Cf. Bicon*, 441 F.3d at 952 ("[W]hen the limitations in the body of the

3

claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." (internal quotation marks and citations omitted)). One of these limitations is that the "benefits" in question are confined to consumers associated with "third party enabling organizations." Moreover, both Claims 1 and 9 of the '822 patent end with the phrase "wherein said benefit includes at least one of a discounted rate and any other value available to the consumer as a result of the consumer's membership in said one or more enabling organizations." '822 Patent col.9 ll.53-56; *id.* col.10 ll.49-52.

Plaintiff's proffered construction appears explicitly in the specification. *Id.* col.3 ll.18-23. However, the language it identifies is followed immediately with a note that "[t]he invention particularly facilitates use of benefits which are offered to those consumers having an association with one or more third-party enabling organizations." *Id.* col.3 ll.23-25. Later, the '822 Patent reiterates but alters this definition, stating that "'benefits' as used herein shall be understood to mean a discounted rate or any other added value available to a member of the enabling organization, which is not generally available to the public." *Id.* col.4 ll.34-37. For this reason, the Court finds that Plaintiff's proposed construction is incomplete and fails to account for the limitations on "benefits" that emerge from both the claims and the specification. The language of the claims, as well as further explanations throughout the specification, indicates that "benefits" as used in the '822 patent are limited to those received as a result of the consumer's association with an enabling organization. The Court therefore adopts Defendant's proposed construction in part, but declines to include its proposed additional limitation, namely, that benefits must be provided by "third party *supplier[s]*," which is not supported anywhere in the '822 patent.

Accordingly, the Court construes "benefit" to be a discounted rate or other added value that is offered to a consumer in addition to what is otherwise offered to the general public as a result of the consumer's association with or membership in an enabling organization.

2. "Benefit correlation information"

Claim 1 of the '822 Patent describes Plaintiff's system as a "means for storing in a memory in the computer system . . . benefit correlation information," and a "means for analyzing said enabling organization information and said benefit correlation information to determine whether any enabling organization to which the consumer is affiliated is offering a potentially applicable benefit for said purchase plan data and whether said purchase plan data satisfies all requirements for obtaining said potentially applicable benefit." '822 Patent col.9 ll.32-34, 43-49.

Plaintiff argues that "benefit correlation information" is "[i]nformation about specific 'benefits' offered to consumers by a particular enabling organization." (Pl.'s Mem. 6.) Plaintiff adds that "[t]he information is offered to consumers by virtue of their association with an enabling organization." (Pl.'s Opp'n 7.) Defendant proposes that "benefit correlation information" be construed to mean "[d]etailed information for each 'benefit' offered to a consumer as a result of the consumer's affiliation or membership in a particular 'enabling organization' sufficient to enable a processor to determine whether a particular 'benefit' is applicable to a particular 'purchase plan.'" (Def.'s Br. 23.)

4

Although Plaintiff does not include the word "detailed" in its proposed construction, it concedes in its briefing that some further detail is required. (See Pl.'s Br. 6 ("The term has a discernable meaning – the *detailed* information about specific benefits offered by an enabling organization to its participating members . . . .") (emphasis added).) Moreover, the specification clearly states that "'correlation information' shall be understood to mean detailed information provided for each benefit offered by an enabling organization which permits the CPU to determine whether a particular benefit may be of use to a particular consumer." '822 Patent col.4 ll.45-49; *see also id.* col.5 ll.45-55 (describing a "correlation file" which "contains specific information for [the computer] to determine whether a benefit . . . will have some potential usefulness to a consumer . . .).

Accordingly, because Defendant's construction is directly supported by the specification, and is, if anything, less ambiguous than the construction offered by Plaintiff, the Court adopts Defendant's construction of the term "benefit correlation information."

### 3.  "Consumer information"

Claim 1 of the '822 Patent describes Plaintiff's system as providing the "means for comparing . . . identification information to . . . consumer information to determine those enabling organizations, if any, to which said consumer has an affiliation." '822 Patent col.9 ll.39-42. Claim 9 identifies a method for entering information into a computer system and then operating the system "to compare said identification information to said consumer information to determine those enabling organizations, if any, to which said consumer has an affiliation." *Id.* col.10 ll.33-41. Claim 17 describes the system's capacity for storing "consumer information identifying one or more of said organizations to which an individual travel consumer has an association."[3] *Id.* col.12 ll.6-9.

Plaintiff argues that this term need not be construed. (Pl.'s Br. 8.) However, in the event that construction is deemed necessary, Plaintiff proposes that "consumer information" be construed as "[i]nformation that includes name, number, social security number, credit card account number, or any other combination of letters and number[s] which uniquely identifies a particular individual." (*Id.*) Alternatively, Plaintiff would add to the end of that definition the following: ". . . and identifying one or more enabling organizations to which an individual consumer has an affiliation." (Pl.'s Opp'n 12.) Defendant argues that "consumer information" means "[a]n identifying name or number for a particular consumer, associated with an identifying list of 'enabling organizations' of which the particular consumer is a member or with whom the consumer has an affiliation." (Def.'s Br. 22.)

As an initial matter, it is true that a district court need not construe every term; however, where there is a "fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Because the parties have not yet made motions for summary judgment, and it is therefore premature to determine that any particular term will or will not be

---

[3] This is the only portion of the disputed claims that seems to limit the invention described in the '822 Patent to travel only, and exclude goods or services. The parties do not appear to argue that the Patent should be so limited, nor would such an argument be reasonable based on the totality of the claims and other portions of the Patent.

dispositive, the Court will construe all disputed terms.

The claims provide little clarification regarding the term "consumer information." The specification, however, states that "[i]n a fully operational system, the consumer identification information could be a social security number, credit card account number, or any other combination of letters and numbers which uniquely identify a particular individual authorized to use the system." '822 Patent col.5 ll.12-15. "Consumer information generally includes an identifying name or number for a particular consumer." *Id.* col.4 ll.20-22.

Defendant's suggested construction of "an identifying name or number" is too limiting compared with the '822 Patent's broad description of the possible forms consumer information could take. Accordingly, because Defendant "has failed to demonstrate how [Plaintiff's] construction . . . is inconsistent with the claim language or specification or is a deviation from how the term is understood by a person of ordinary skill in the art," the Court largely adopts Plaintiff's proposed construction. *P3 Int'l Corp.*, 2009 WL 1424178, at *8. However, the Court also finds, based on the claims and the specification, that "consumer information" necessarily includes those enabling organizations with which the consumer is associated.

Thus, the Court construes "consumer information" to mean information that includes name, number, social security number, credit card account number, or any other combination of letters and numbers which uniquely identifies a particular individual, associated with an identifying list of enabling organizations of which the particular consumer is a member or with whom the consumer has an affiliation.

4. "Consumer purchase plan"

The '822 Patent mentions "consumer purchase plan" or "purchase plan" in several places. Claim 1 describes Plaintiff's system as providing "means for inputting into [the] computer system identification information for a consumer and a set of consumer purchase plan data for said consumer." '822 Patent col.9 ll.35-37. Claim 17 describes the system's capacity to "automatically identify[] benefits enabled by said enabling organization which may be used by a consumer for receiving benefits from goods and service providers which coincide with a consumer's purchase plans." *Id.* col.12 ll.19-23.

Plaintiff suggests that the term "consumer purchase plan" has "a discernable plain and ordinary meaning" and may not need to be construed at all by the Court. (Pl.'s Br. 7.) However, Plaintiff proposes a construction that would include "[p]urchase plans relating to any type of goods or services." (*Id.*) By contrast, Defendant contends that the term should be construed to mean "[a] proposed travel itinerary for a future trip, or data sufficient to identify a specific type of good or service for possible future purchase by the consumer and preferred brands, price range, time period when the purchase will occur or geographical area where the consumer is willing to travel to make the purchase." (Def.'s Br. 20.)

While "the court may not import an additional limitation into the claim" based on the specification, *Kwik Prods.*, 356 F. Supp. 2d at 315, Plaintiff's construction is circular – by defining a "purchase plan" as a purchase plan, it is completely unclear what information is contained in such a plan. Although "purchase plan" is not a technical term and has an ordinary, and very broad, meaning, accepting Plaintiff's definition, or

6

failing to construe the term at all, would leave unacceptable vagueness and ignore the context of the '822 Patent, which provides many clues as to a more specific meaning of "consumer purchase plan."

The specification states that "[t]he purchase plans can relate to any type of goods or services," '822 Patent col.7 ll.26-27, and that an aim of the patent is "to supply third-party providers of goods and services with a marketing medium whereby consumers seeking specific travel services or other products, may be made aware of special discounts or benefits on very short notice," *id.* col.2 ll.11-16. As described in the preferred embodiment, the consumer "would be prompted to enter . . . all necessary information to determine whether a particular benefit was applicable." *Id.* col.6 ll.47-50.

Plaintiff fails to establish that Defendant's reference to goods and services is unreasonably limiting, especially considering that such a construction covers a broad category and the '822 Patent repeatedly refers to goods and services, and particularly travel services. Moreover, Defendant's proposed construction reflects that the term "purchase plan" must be understood in the context of the computer system, and thus a purchase plan in this context must include certain details that would allow the system to determine whether any benefits are applicable. *Cf. Chrisha Creations, Ltd. v. Dolgencorp, Inc.*, No. 08 Civ. 1065 (MGC), 2011 WL 4529225, at *4 (S.D.N.Y. Sept. 28, 2011) ("In construing claims, the problem the inventor was attempting to solve, as discerned from the specification and the prosecution history, is a relevant consideration." (quoting *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1160 (Fed. Cir. 1997)).

Accordingly, the Court adopts Defendant's construction of "consumer purchase plan."

5. "Enabling organization"

The term "enabling organization" appears in the preambles of all three disputed claims in the '822 Patent. The preamble of Claim 1, for example, provides for a system allowing consumers to make better use of "available benefits from a plurality of goods and service providers, wherein said benefits are offered specifically to those consumers having an association with one or more third party enabling organizations." '822 Patent col.9 ll.26-31; *see also id.* col.10 ll.24-29; *id.* col.11 ll.17-22. The term appears in many other places as well, such as in Claim 9, which describes, *inter alia*, a method by which "the computer system . . . compare[s] . . . identification information to . . . consumer information to determine those enabling organizations, if any, to which said consumer has an affiliation." *Id.* col.10 ll.38-41.

Under Plaintiff's construction, an enabling organization is "any organization or group which makes available, for specific individuals who are members or associated with such enabling organization, special benefits which are not available to the general public," and "can be the same or different organization or a part of the group that provides goods and services, or a part of the group together with a database provider." (Pl.'s Br. 9.) Alternatively, Plaintiff would consent to defining an enabling organization as an entity "other than the consumer or provider of goods and services." (Pl.'s Opp'n 15-16.)[4]

---

[4] Plaintiff consents to this construction if the Court views the Examiner's comments during the prosecution of the '822 Patent as limiting. (Pl.'s Opp'n 15-16.) As discussed *infra*, the Court

7

Defendant argues that an enabling organization is "[a]n organization or group, *other than the consumer, the database provider or the goods and services provider*, which makes available to its members, or to other persons who are associated with it, 'benefits' that are provided by third party suppliers of goods or services based on an arrangement between the 'enabling organization' and the third party supplier." (Def.'s Br. 12 (emphasis added).)

For the reasons set forth below, the Court construes "enabling organization" to mean an organization or group which makes available to its members or associated persons benefits that are provided by unrelated suppliers of goods or services based on an arrangement between the organization and such goods or services providers.

The preambles of the three relevant claims in the '822 Patent place the caveat "third party" before "enabling organizations" when explaining their role vis-à-vis goods and service providers, thus signaling the separation between the two entities. '822 Patent col.9 ll.26-31; *see also id.* col.10 ll.24-29; *id.* col.11 ll.17-22. Moreover, the specification expressly differentiates between the entities. The specification states, in describing the need for the invention, that "the membership organization to which individuals belong, acts as an 'enabling' type of organization in the sense that it does not directly provide a benefit or discount, but instead enables discounts or benefits available through a third party." *Id.* col.1 ll.21-25. The description of the prior art clarifies that "it would be desirable to provide a system whereby organizations which 'enable' discounts and benefits from third-party service and/or goods providers could do so in a manner which allows the members to more advantageously make use of such benefits and discounts." *Id.* col.2 ll.7-11.

While the '822 Patent strongly indicates that an enabling organization is not the same entity as a goods and service provider, it specifically states that the database provider and the enabling organization could be a single entity.[5] Describing the potential for expansion, the specification notes that the database operator could negotiate directly with goods and services providers to get discounts; as a result, "the organization operating the database would itself be the enabling organization." *Id.* col.7 ll.66-67. Moreover, while the claim preambles describe enabling organizations as "third part[ies]" with respect to goods and service providers, the relevant claims nowhere define, limit, or distinguish the entity operating the database.

However, the Examiner's statement of reasons for allowance states that:

> [t]he prior art admits arrangements whereby travel clubs will have affiliations with multiple goods and service providers and will find the lowest rates for a customer's planned itinerary. However, there is no suggestion or disclosure in the prior art of a *separate unrelated entity* which maintains records on consumers and third party enabling organizations.

(Decl. of Catriona M. Collins, Feb. 9, 2011, Ex. 1, at 3 (emphasis added).) The Examiner thus concluded that the novelty of the invention lay in its conception of a new

---

concludes that this limitation applies, but not solely based on the Examiner's comments.

[5] Additionally, neither party seriously argues that the consumer need not be a separate entity from the enabling organization.

8

entity that would find and organize benefits offered by other entities.

An examiner's statements are not without probative value, as they "may be evidence of how one of skill in the art understood the term at the time the application was filed." *Salazar v. Proctor & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005). However, an examiner's statement "will not necessarily limit a claim" and accordingly "an applicant's silence regarding [statements made by an examiner during prosecution] does not preclude the applicant from taking a position contrary to the examiner's statements when the claim terms are construed during litigation." *Id.* at 1347. Accordingly, the Court finds that the plain language of the specification and the fact that neither "database provider" nor any similar term appears in the claims outweigh the Examiner's unilateral comment about the invention's purpose, and concludes that the entity operating the database may also be an enabling organization.

For the foregoing reasons, the Court construes "enabling organization" to be an organization or group which makes available to its members or associated persons benefits that are provided by unrelated suppliers of goods or services based on an arrangement between the organization and such goods or services providers.

6. "Enabling organization information"

Claim 1 of the '822 Patent describes the system's "means for analyzing . . . enabling organization information and . . . benefit correlation information to determine whether any enabling organization to which the consumer is affiliated is offering a potentially applicable benefit for . . . purchase plan data and whether said purchase plan data satisfies all requirements for obtaining said potentially applicable benefit." '822 Patent col.9 ll.43-49.

Plaintiff construes enabling organization information to be "[d]ata relating to an enabling organization or group of organizations, including one or more benefits offered to a consumer as a result of the consumer's affiliation with or membership with such enabling organization." (Pl.'s Br. 10.) Defendant proposes that the term be construed to mean "[i]nformation that includes, for each 'enabling organization,' a list of *all* the 'benefits' offered to a consumer as a result of the consumer's affiliation or membership in the 'enabling organization.'" (Def.'s Br. 22 (emphasis added).) Defendant argues that "[a] computer system that does not store information as to all the benefits available to the consumer as a result of his membership in a particular enabling organization would not solve" the problem that the Patent purports to aim to solve – namely, the difficulty of sorting through various benefits when planning a purchase. (Def.'s Opp'n 18.)

The Examiner emphasized the fact that the prior art did not contemplate an entity able to inform customers "of *all* benefits relevant to a purchase plan which are available on the basis of the customer's association with at least one of the third party enabling organizations." (Collins Decl., Ex. 1, at 3 (emphasis added).) The specification, however, provides that enabling organization information "generally includes a list of certain specific organizations which make available one or more benefits for consumers associated with such enabling organization." '822 Patent col.4 ll.30-33; *see also id.* col.4 ll.37-40 ("A list of one or more benefits provided by each of the enabling organizations is associated with such enabling organization.").

9

The Court finds no need to include limitations, as suggested by Defendant, that have no support in the claims or specification. Accordingly, the Court adopts Plaintiff's construction.

### 7. "Goods and service providers"

The preambles of all three disputed claims in the '822 Patent refer to methods "permitting a consumer to more effectively make use of a variety of available benefits from a plurality of goods and service providers." '822 Patent col.9 ll.26-28; *id.* col.10 ll.24-27; *id.* col.11 ll.17-19. Additionally, Claim 17 describes means for storing a database comprised of "enabling organization information identifying one or more of said enabling organizations which enable benefits from one or more of said goods and service providers," and a processor which identifies "benefits enabled by said enabling organization which may be used by a consumer for receiving benefits from goods and service providers which coincide with a consumer's purchase plans." *Id.* col.11 ll.25-28; col.12 ll.20-23.

Plaintiff argues that the term "goods and service providers" does not need to be construed. (Pl.'s Br. 11; Pl.'s Opp'n 17.) Alternatively, Plaintiff proposes that "goods and service providers" be defined as "[e]ntities or individuals that provide goods or services" (Pl.'s Br. 11), or "[e]ntit[ies] or individual[s] that provide[] goods or services and [are] not [] enabling organization[s]" (Pl.'s Opp'n 17).

Defendant argues that the term "goods and service providers" means "[a] third party supplier of products or services who is not an enabling organization and is not the database provider." (Def.'s Br. 17.) Because the preambles indicate that the invention organizes benefits from a "plurality of goods and service providers,"

according to Defendant, "a system in which the database provider is also the 'goods and service provider' is not even arguably within the scope of the claims, because the claims unambiguously require more than one 'goods and service provider.'" (*Id.* at 18.)

While the Court agrees that some differentiation among the different entities is necessary, as articulated in the construction of "enabling organization," the Court finds that "goods and service providers" is a sufficiently clear term, and is used in a manner consistent with its general definition. Accordingly, the Court adopts Plaintiff's second proposed construction, and construes "goods and service providers" to be entities or individuals that provide goods or services and are not enabling organizations.

### IV. CONCLUSION

The disputed terms, as set forth in the parties' claim construction briefs, are construed as set forth above.

As provided in the Case Management Plan and Scheduling Order, dated July 7, 2010, all discovery shall be completed no later than March 23, 2012. Pre-motion letters, if any, shall be submitted no later than March 23, 2012 and shall comply with Rule 2.A of the Court's Individual Practices. The Court will hold a post-discovery conference on April 13, 2012 at 3:00 p.m.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: January 12, 2012
      New York, New York

\*\*\*

Plaintiff is represented by Jean-Marc Zimmerman of Zimmerman, Levi & Korsinsky, LLP, 226 St. Paul Street, Westfield, New Jersey 07090.

Defendant is represented by Benjamin Sahl, Eric Joseph Shimanoff, Mark Montague, Michael F. Maschio, and Catriona M. Collins, of Cowan, Liebowitz & Latman, P.C., 1133 Avenue of the Americas, New York, New York 10036.